# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In Re: National Hockey League Players' Concussion Injury Litigation

This Document Relates to All Actions

MDL No. 14-2551 (SRN/JSM)

**MEMORANDUM OPINION AND ORDER**

**[FILED UNDER SEAL]**

SUSAN RICHARD NELSON, United States District Court Judge

This matter is before the Court on Plaintiffs' Appeal of Confidentiality Rulings [Doc. No. 340] in the Magistrate Judge's Order of December 9, 2015 ("the Order") [Doc. No. 315].[1]  For the reasons set forth herein, Plaintiffs' appeal is granted in part, denied in part, and denied as moot in part and the Order is affirmed in part and respectfully reversed in part.

## I.    BACKGROUND

Plaintiffs, former professional hockey players in the National Hockey League ("NHL"), seek to represent two classes of former NHL players for the following:  (1) medical monitoring of current cellular and subcellular injuries allegedly caused by Defendant's actions or inactions concerning concussive and subconcussive impacts during

---

[1]  While Plaintiffs requested oral argument concerning this appeal, the Local Rules do not provide for a hearing in this situation.  Moreover, the Court is fully apprised of the parties' positions, has carefully reviewed the record and the documents in question, and finds that no hearing is necessary.

the players' careers in the NHL; and (2) further medical monitoring of those players

already diagnosed with a neurodegenerative illness, along with compensatory damages.

(See Pls.' First Am. Consol. Class Action Compl.¶¶ 1-2 [Doc. No. 351].)  They contend

that the NHL knew or should have known of a growing body of scientific evidence

purportedly showing a link between repetitive concussive events, sub-concussive events

and/or brain injuries and a greater risk for chronic neuro-cognitive illness and disabilities

both during the players' careers and, especially, later in life.  (Id. ¶ 5.)

Discovery in this matter has been underway for some time.  Pursuant to the parties'

concerns about the confidentiality of certain requested material, the Court has entered

protective orders.  The Court's Amended Protective Order of April 23, 2015 provides that

a "Protected Document" is a document qualifying "for protection under the standards

developed under Rule 26 of the Federal Rules of Civil Procedure, or other applicable laws

or rules related to trade secret, confidential, proprietary, commercially, or competitively

sensitive information, or information protected under privacy laws, including information

protected under the Health Insurance Portability and Accountability Act. ("HIPAA")."

(Am. Protective Order  ¶ 3 [Doc. No. 140].)  This protective order, however, "does not

confer blanket protection on all discovery."  (Id. ¶ 2.)  Rather, its protections apply "only

to the limited information or items entitled to confidential treatment under applicable legal

principles."  (Id.)  If a party wishes to contest the designation of a particular document, it

must give the supplying party written notice, including a brief explanation of the basis for

challenging the confidential designation.  (Id. ¶ 15.)  If the parties are unable to stipulate,

any party may challenge the propriety of a designation by motion to the Court.  (Id.)

On October 8, 2015, Plaintiffs filed their Motion to Compel Confidentiality De-Designation by the NHL.  In their motion, Plaintiffs challenged the confidentiality designations of 54 documents produced by Defendant and sought to "de-designate" them as non-confidential.[2]  Plaintiffs argued that the NHL failed to meet its burden of showing that any of the documents merited protection under Rule 26.  (Pls.' Mem. Supp. Mot. to Compel at 7 [Doc. No. 255].)

The NHL, however, contended that Plaintiffs, through their motion, improperly sought to litigate their case in the media and to embarrass the NHL.  (Def.'s Opp'n Mem. at 1, 10-11 [Doc. No. 273].)  The NHL maintained that there was good cause to maintain the confidentiality of the disputed documents because disclosure of the information would harm the NHL.  (Id. at 4.)  The NHL identified several reasons for non-disclosure of the disputed documents; of those reasons, the following remain relevant to the documents on appeal:  (1) as to documents containing commercially and competitively sensitive information, disclosure would result in a windfall to the NHL's "competitor," the National Football League ("NFL"), (id. at 4, 14); (2) the disclosure of certain documents containing deliberations at meetings of the Board of Governors, General Managers, and the Player/Club Compensation Committee would disclose confidential deliberations and could

---

[2]  Plaintiffs initially challenged the confidential designations of 61 documents; after filing their motion, Defendant voluntarily withdrew its claims of confidentiality on seven of the contested documents.

3

chill future deliberations (id. at 4, 20); (3) the disclosure of certain documents concerning

supplemental discipline,[3] rule changes, and League business would impair full and frank

discussion, damaging the NHL's ability to protect players' safety and the League's

relationships with fans, clubs, players, and officials (id. at 4, 24); and (4) because certain

documents reflected the views of NHL executives regarding the responses of the NHL

Players' Association ("NHLPA") to proposed rule changes, the disclosure of these

documents would reveal the NHL's strategic thinking and affect its future collective

bargaining negotiations with the NHL.  (Id. at 25.)  In support of their claims of

confidentiality, Defendant submitted the Declaration of Gary B. Bettman [Doc. No. 274]

and the Declaration of Colin J. Campbell [Doc. No. 273].  In their declarations, Bettman,

Commissioner of the NHL, and Campbell, the NHL's Executive Vice President and

Director of Hockey Operations, attest to the need for confidentiality for these documents

and describe the harms that the NHL would experience if the documents were disclosed.

    After conducting a hearing on Plaintiffs' motion and reviewing each of the 54

documents in camera, Magistrate Judge Mayeron issued a 48-page Order [Doc. No. 315],

granting in part and denying in part Plaintiffs' motion.  The magistrate judge overruled the

NHL's confidentiality designations on 21 documents and sustained the NHL's

confidentiality designations in whole or in part on 33 documents.

    In the instant motion, Plaintiffs request the affirmance of the magistrate judge's 21

---

[3] The NHL explains that "supplemental discipline" is "a process through which the NHL may suspend and/or fine players, or issue warnings, regarding certain on-ice conduct."  (Campbell Decl. ¶ 4.)

de-designations and they appeal the magistrate judge's rulings sustaining the NHL's confidentiality objections on the following nine documents:  PRN 1, 2, 4, 10, 18, 28, 29, 32, and 33.  (Pls.' Appeal at 2 [Doc. No. 340].)  They contend that absent class members should have access to these documents in order to better evaluate their claims and that the public at large has great interest in sport-related concussions and the long-term consequences of brain trauma resulting from concussive and sub-concussive injuries.  (Id.)  The NHL did not appeal the Order, but it opposes Plaintiffs' motion to de-designate the nine documents in question.  (See Def.'s Opp'n Mem. [Doc. No. 362].)  As there are no objections to the magistrate judge's de-designations, they are affirmed.

The Court therefore turns to Plaintiffs' appeal concerning the confidentiality designations of the nine documents for which the magistrate judge sustained the NHL's confidentiality designations in whole or in part.  The nine documents fall into three categories:  (1) commercially and competitively sensitive documents (applicable to PRN 1, 2) (Order at 7-8 [Doc. No. 315]); (2) minutes, notes, and summaries of meetings of the Board of Governors, General Managers and the Player/Club Compensation Committee (applicable to PRN 4, 10, 18) (id. at 8-9); and (3) documents regarding supplemental discipline, rule changes, and League business (applicable to PRN 28, 29, 32, 33) (id. at 9-10).

## II.    DISCUSSION

The Court's review of decisions of a magistrate judge on nondispositive matters is limited to determining whether the Order is clearly erroneous or contrary to law.  D. Minn.

L. R. 72.2(a).  This Court pays great deference to a magistrate judge's determinations.  See

Reko v. Creative Promotions, Inc., 70 F. Supp.2d 1005, 1007 (D. Minn. 1999) ("The

standard of review applicable to an appeal of a magistrate judge's order on a

nondispositive issue is extremely deferential.").

### A.      Rule 26(c)

Rule 26 contemplates liberal discovery, including the discovery of information

"reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P.

26(b)(1).  Even if discovery is relevant, it is "not permitted where no need is shown, or

compliance would be unduly burdensome, or where harm to the person from whom

discovery is sought outweighs the need of the person seeking discovery of the

information."  Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2, 197 F.3d 922,

925 (8th Cir. 1999).  Rule 26(c) provides that the court in which an action is pending

"may, for good cause, issue an order to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).

As noted by the magistrate judge, a party seeking to establish good cause under

Rule 26(c) must provide specific facts to show that the requested protection is necessary,

as opposed to "stereotyped and conclusory statements."  Gulf Oil Co. v. Bernard, 452 U.S.

89, 102 n.16 (1981); see also Misc. Docket Matter No. 1, 197 F.3d at 926 (citation

omitted) (stating that the party seeking protection bore the burden to demonstrate good

cause for the issuance of a protective order and that his claim of harm must be based on

more than stereotypical and conclusory statements).  The magistrate judge correctly noted

that prior to issuing a protective order, courts may consider several factors such as those set forth in Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786-87 (3d Cir. 1994). See Misc. Docket Matter No. 1, 197 F.3d at 926 (discussing Pansy factor of embarrassment); see also Arnold v. Pa. Dept. of Transp., 477 F.3d 105, 108 (3d Cir. 2007) (applying Pansy factors in "the good cause balancing test."); Constand v. Cosby, 112 F. Supp. 3d 308, 312-13 (E.D. Pa. 2015) (applying Pansy factors to determine whether to unseal deposition testimony). The Pansy factors, as described in Constand, include: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. Constand, 112 F. Supp. 2d at 312-13. This Court has previously employed similar balancing tests to determine whether a party seeking to maintain confidentiality has established the requisite showing. See, e.g., Krueger v. Ameriprise Fin., Inc., No. 11-CV-2781 (SRN/JSM), 2015 WL 224705, at *7 (D. Minn. Jan. 15, 2015) (citing Shedin v. Ortho-McNeil-Janssen Pharms., Inc., No. 08-CV-5743 JRT, 2011 WL 1831597, at *1-2 (D. Minn. May 12, 2011) (quoting Doe v. Exxon Mobile

7

Corp., 570 F. Supp. 2d 49, 52 (D. D.C. 2008)).[4]

Because Plaintiffs contend that the magistrate judge erred in her application of the law to the documents in question, rather than in the applicable law itself, the Court analyzes the documents in question.  To the extent that the Court finds any error in the magistrate judge's analysis, the Court recognizes that the magistrate judge's in camera review involved a far greater number of documents, for which grouping, and determinations by grouping facilitated the review process.  Because this appeal involves a much more limited number of documents, this Court is in a better position to consider the parties' positions on individual documents.  Finally, this Court reminds the parties that confidential designations and rulings on the same, whether herein or in Magistrate Judge Mayeron's Order, have no bearing on whether a given document may be used at trial.  The designation process merely shields certain documents from disclosure to the public before trial and in no way affects the use of documents at trial.

---

[4] In Krueger, this Court stated, that as to judicial records, the presumption of public access could be overcome by "compelling reasons" and after consideration of the following factors:  (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings. Krueger, 2015 WL 224705, at *7 (citing Shedin, 2011 WL 1831597, at *1-2).

### B.      Commercially and Competitively Sensitive Documents (PRN 1 & 2)

As to commercially and competitively sensitive documents, documents PRN 1 and 2 relate to a market research study performed on the NHL's behalf by a third party, the Edelman Berland firm, after the filing of this lawsuit.  (Order at 20-22 [Doc. No. 315].) The study concerns fan perception of violence in the NHL versus the NFL.  (Id. at 21.) Defendant asserted that disclosure of this information would potentially reveal commercially sensitive information and cause the NHL competitive harm with respect to its competitor, the NFL.  (Id.)  In the Bettman Declaration, submitted by the NHL in opposition to Plaintiffs' motion, Commissioner Bettman stated that the NFL is among the NHL's  competitors.  (Bettman Decl. ¶¶ 3,18.)  Plaintiffs argued that any alleged harm if the document were de-designated was speculative and that the NHL is incapable of experiencing competitive harm because it lacks competitors.  (Order at 22 [Doc. No. 315].)

The magistrate judge found that the NHL had satisfied the good cause standard for protecting the documents from disclosure because they dealt with issues of strategic importance to the NHL, reflecting proprietary, commercially or competitively sensitive information.  (Id. at 21.)  Magistrate Judge Mayeron rejected Plaintiffs' argument that the NHL's concern about potential harm was too speculative, stating, "The NHL cannot prove harm that has not yet occurred; it can only set forth its best case regarding why such harm is likely to occur, and the Court finds that Bettman's Declaration, read in conjunction with the documents, does just that."  (Id. at 22.)  Also, the magistrate judge accepted Defendant's position that it has business competitors:  "The Court has no problem

accepting Bettman's statement that the NHL competes with other sports leagues such as

the NFL, major league baseball, and the NBA, along with other producers and marketers

of sports and entertainment products." (Id.) (citing Bettman Decl. ¶ 3.)  Accordingly,

Magistrate Judge Mayeron concluded that these two documents were properly designated

"Protected Documents" under the Amended Protective Order and pursuant to Rule 26.

### 1.    PRN 1

PRN 1 is the Edelman Berland study.  The Court agrees with the magistrate judge

that this study is properly designated as confidential, as the disclosure of this information

would potentially reveal commercially sensitive information and might inflict competitive

harm on the NHL.  As noted by Magistrate Judge Mayeron, the Bettman Declaration, read

in conjunction with PRN 1, states that the NHL competes with other sports leagues such as

the NFL.  (Id. at 21) (citing Bettman Decl. ¶ 3.)  The magistrate judge did not clearly err in

finding that the NHL has met the good cause standard for designating this document as

"Protected" under the Amended Protective Order and pursuant to Rule 26.

### 2.    PRN 2

As to PRN 2, however, the Court finds that it does not warrant confidential

designation and must be de-designated.  This email chain, dated August 4, 2014, between

Mike Berland, Head of Communications for Edelman Berland, and Gary Meagher, the

NHL's Executive Vice President of Communications, apparently attaches an electronic

copy of the study noted above, which is not part of the hard copy of PRN 2, and solicits

feedback.  (PRN 2 at NHL0201355.)  Meagher states:

> I could sum up in one line . . . NFL is in the business of selling that they are
> making the game of football safer at all levels – it is smoke and mirrors but
> they are masters of smoke and mirrors . . .   The [NHL] has never been in the
> business of trying to make the game safer at all levels and we have never
> tried to sell the fact that this is who we are . . .   The question is:  should we
> be in that business and if we were, what could we possibly achieve without
> throwing millions of dollars at education.

(Id.)   These are the comments of Meagher.  While Meagher draws a comparison between

the NHL and the NFL, nothing that he says, nor Berland's responses, consist of

proprietary, commercially sensitive or confidential information, unlike the report itself in

PRN 1.  (Id.)  Accordingly, the Court respectfully disagrees with the magistrate judge's

ruling and reverses it as to PRN 2.  Good cause has not been established for designating

PRN 2 as "Protected" and it shall be de-designated accordingly.

## C.      Minutes, Notes, and Summaries of Various Meetings (PRN 4, 10, & 18)

The second category of documents - the minutes, notes and summaries of various

meetings involving NHL General Managers - include documents numbered PRN 4, 10,

and 18.  Before the magistrate judge, Defendant argued that the disclosure of these

documents would chill future deliberations among these groups, as the parties had an

expectation of confidentiality in the course of their discussions.  (Order at 8 [Doc. No.

315].)  The magistrate judge generally agreed and either sustained Defendant's

confidentiality designations, or partly sustained them.  (Id. at 23-24; 33; 37.)

Specifically as to PRN 10 and 18, which are minutes of General Manager

meetings, Magistrate Judge Mayeron ordered the de-designation of portions of the

documents that involved issues germane to this lawsuit and important to the health and

11

safety of the public, reflected presentations on concussions and head hits, and did not

reveal any discussions or deliberations.  (Id.)  However, she sustained the remainder of the

confidentiality designations in these two documents, finding that they memorialized

discussions and deliberations, which, if disclosed, would deter future such discussions.

(Id. at 33; 37.)

On appeal, Plaintiffs argue that with respect to these documents, Defendant's

declarations are conclusory, fail to satisfy the requirements of Rule 26(c), and that no

portion of these documents should remain confidential.  (Pls.' Appeal at 12-14 [Doc. No.

340].)

### 1.    PRN 4

PRN 4 is a March 2011 email chain between the NHL's Bettman and Bill Daly,

Deputy Commissioner of the NHL.  (PRN 4 at NHL0026146-47.)  Bettman and Daly

discuss Kerry Fraser, a former NHL employee, now a hockey analyst and internet blogger,

and an email that Fraser was circulating entitled "Another NHL player suffers concussion

on Friday Night - no suspension."  (Id.)  Alerted to Fraser's negative comments about

concussions, Bettman ▮▮▮REDACTED▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮ (Id. at NHL0026146.)

Daly then states, ▮▮▮REDACTED▮▮▮

▮▮▮▮▮▮ (Id.)  In reply, Bettman comments, ▮▮▮REDACTED▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

REDACTED . This campaign, his book - somewhat delusional." (Id.) Daly replies, "[H]e's not the only person who thinks we should be penalizing head shots more severely than we do," to which Bettman responds, "That's not the issue.  His disparaging campaign is." (Id.)

Defendant designated these portions of the document regarding REDACTED as confidential.  In response to Plaintiffs' appeal, Defendant argues that PRN 4 is not relevant to the issues in this suit and even if it is, the disclosure of this document would potentially harm the NHL's relationship with current and future employees.  (Def.'s Opp'n Mem. at 6-7 [Doc. No. 362].)

Whether PRN 4 warrants confidential designation is a close call.  Because the challenged text reveals REDACTED the disclosure of these portions of the document certainly could adversely affect the NHL's employee relations and its ability to hire and attract new employees.  (Order at 24 [Doc. No. 315].)  That alone, however, does not warrant confidential designation in this instance.  Instead, it is the disclosure of the simple fact that REDACTED that could adversely affect the NHL's employee relations and ability to hire and attract new employees.  It is this interest that is worthy of protection, as employers and employees have good reasons to keep such information confidential and an expectation of confidentiality with respect to matters such as REDACTED The Court thus finds no clear error in the magistrate judge's determination that these portions of PRN 4 are designated confidential, although the Court applies a slightly

different analysis.  Accordingly, these designations within PRN 4 shall remain designated as "Protected" under the Amended Protective Order.

### 2.    PRN 10 & 18

PRN 10 and 18 are minutes from two separate NHL General Managers' meetings. The magistrate judge sustained confidentiality designations for portions of both documents to the extent that they memorialized discussions or deliberations of NHL General Managers.  (Id. at 33; 37.)  She found that the disclosure of this content would deter such discussions and deliberations and that other information addressed topics not relevant to issues in the lawsuit, or the health and safety of the public.  (Id.)  However, Magistrate Judge Mayeron de-designated portions of both documents in which no discussions or deliberations were revealed.  (Id.)  She found that the disclosure of this type of information was highly unlikely to chill future deliberations.  For example, she de-designated portions of the minutes in PRN 18 that merely summarized presentations on subjects such as concussions and head hits.  (Id. at 37.)

While Plaintiffs contend that these documents should not be designated confidential at all, on appeal, they now limit their request for the de-designation of PRN 10 and 18 to specific passages of these minutes, arguing that they involve factual presentations rather than deliberations among General Managers.  (Pls.' Appeal at 13 [Doc. No. 340].)  In response, Defendant has agreed to de-designate portions of both documents based on the magistrate judge's reasoning for de-designation.  (Def.'s Opp'n Mem. at 8-9 [Doc. No. 362].)  In light of the narrower scope of Plaintiffs' appeal regarding PRN 10 and 18 and

14

Defendant's willingness to de-designate much of the information, most of the dispute as to

PRN 10 and 18 is rendered moot.  Accordingly, Plaintiffs' motion is denied as moot in

part.

As to the limited areas of disagreement, the Court affirms the magistrate judge's

ruling.  To the extent that a few passages are designated confidential, the magistrate

judge's reasoning and analysis is correct.  The passages in question involve deliberations

and discussions of the NHL's General Managers, which, if disclosed, would chill full and

frank discussions.  Accordingly, the Court adopts the designations of the magistrate judge,

as modified by Defendant and discussed below.

### a.      PRN 10

With respect to PRN 10, and as reflected in Exhibit 1 to the Connolly Declaration,

the NHL shall de-designate almost all of the challenged minutes regarding the presentation

on fighting (beginning on NHL0143089 and concluding on NHL0143093), but the

following shall remain "Protected" and need not be de-designated:  the two paragraphs on

NHL0143092 starting with ⬛REDACTED⬛  and ⬛REDACTED⬛  The Court finds that these

two paragraphs memorialize discussions and deliberations of the General Managers, as

Magistrate Judge Mayeron found.  (See Order at 33 [Doc. No. 315].)

### b.      PRN 18

Regarding PRN 18, and as reflected in Exhibit 2 to the Connolly Declaration, the

NHL shall de-designate most of the challenged minutes reflecting the presentation on head

hits and concussions, beginning on NHL0155336 and concluding on NHL0155342.  But

the following shall remain "Protected" and need not be de-designated, as these portions of the document memorialize discussions and deliberations of the General Managers:  (1) the last paragraph on NHL0155338, beginning with ████████ (2) the challenged portions of the first full two paragraphs on NHL0155339 (i.e., in the first full paragraph, the sentence beginning with ████████ and in the second full paragraph, the sentence beginning with ████████ shall remain "Protected"); (3) in the portion of the first full paragraph on NHL0155340, the sentence starting with ████████ through the end of the following paragraph; (4) on NHL0155341, the third paragraph beginning with ████ ████ and the penultimate paragraph beginning with ████████ and (5) all of NHL0155342.

### D.    Documents Regarding Supplemental Discipline, Rule Changes, and League Business (PRN 28, 29, 32, & 33)

The final category of documents, those regarding supplemental discipline, rule changes and League business, include documents PRN 28, 29, 32, and 33.  Before the magistrate judge, Defendant maintained that disclosure of these documents would chill full and frank discussion on issues concerning supplemental discipline and League business and could implicate some labor issues.  (Order at 9 [Doc. No. 315].)  In turn, Defendant argued, this harm would damage the NHL's ability to protect players' safety and impair the NHL's relationships with fans, clubs, the players and officials.  (Id.)  Plaintiffs, however, contended that the NHL failed to make a particularized showing of specific, serious harm, relying instead on conclusory statements and speculation.  (Id. at 10-11.)

The magistrate judge upheld the confidentiality designations, finding that PRN 28 and 29 reflected internal communications between senior executives regarding supplemental discipline imposed on certain players who engaged in hits to the head of other players. (Id. at 41.)  Furthermore, the magistrate judge found that the parties expected their discussions to remain confidential, as the supplemental disciplinary process requires full and frank internal debate among NHL personnel prior to the issuance of a decision.  (Id.)

### 1.    PRN 28

PRN 28 is an email exchange involving  In this email chain, entitled REDACTED they discuss REDACTED (PRN 28 at NHL0025864-65.) REDACTED (Id.)

Plaintiffs argue that this email exchange does not involve a discussion of whether to impose supplemental discipline on a player, because the REDACTED Accordingly, Plaintiffs argue that it does not warrant a confidential designation. The Court disagrees with Plaintiffs and affirms the magistrate judge's ruling that this document was properly designated "Protected."  The participants in the email use the REDACTED as a springboard to a general discussion of supplemental discipline in similar situations.  The NHL has established that the supplemental disciplinary process

requires full and frank internal debate among NHL personnel, as Magistrate Judge Mayeron found.  (Order at 41 [Doc. No. 315].)

### 2.    PRN 29

This document is an email chain involving Bettman, Shanahan, Campbell, and Daly, entitled "Boston/Philly."  In it, Shanahan appears to have just attended or seen a game and reports that it is "another busy night." (PRN 29 at NHL0093634.)  Shanahan elaborates about a particular play in which a player was struck in the head by a hockey puck and speculates about whether the player might receive a small suspension.  (Id. at NHL0093633) (stating, "As it turns out[,] I think only the Boston [player] MIGHT get a small suspension.")  After Bettman asks whether Shanahan has observed "any more concussions," Shanahan replies, "Not so far," to which Bettman responds, "Night is young!"  (Id.)

Plaintiffs argue that the magistrate judge's confidentiality ruling as to PRN 29 was clearly erroneous, as the document does not concern supplemental discipline or any rule changes.  (Pls.' Appeal at 8 [Doc. No. 340].)  The Court agrees.  The only discussion of supplemental discipline is purely speculative as to the Boston player and, unlike PRN 28, there is no other general discussion of any policy relating to supplemental discipline. Rather, it consists of Shanahan's observations of a particular game and warrants no protection from disclosure.  Accordingly, PRN 29 is not entitled to "Protected" status under the Amended Protective Order and Rule 26 and shall be de-designated.

### 3.    PRN 32

18

In PRN 32, another email exchange involving Bettman, Shanahan, and Daly, Shanahan forwards a Toronto Globe and Mail newspaper article entitled "Getting rid of hockey's goons."  The email participants then discuss a time period when the NHL apparently "tried to eliminate staged fights," as well as the interplay between fighting, head injuries/concussions, depression, and personal tragedies.  (PRN 32 at NHL01552200.)  Bettman ponders whether the NHLPA would consent to the elimination of certain "fighter" players and their roles.  (Id.)

The magistrate judge sustained Defendant's confidentiality designation for this document on the ground that it reflected discussions about proposed rule changes.  (Order at 41 [Doc. No. 315].)  The Court disagrees.  Nothing in this document discusses a rule change.  Even when the newspaper article is consulted, for which the website address is provided in the emails, the article discusses the elimination of fighting or suspensions in a general sense, but not with regard to a particular proposal or rule.  See Eric Duhatschek, Getting rid of hockey's goons, Toronto Globe & Mail (Sept. 2, 2011), available at http://license.icopyright.net/ user/viewFreeUse.act?fuid=MjE2MzIyODA%3D.  PRN 32 does not warrant "Protected" status and must be de-designated.

## 4.      PRN 33

As to PRN 33, this document is another email chain involving Bettman, Campbell, and Shanahan.  In it, Campbell asks Shanahan whether everyone is working on their concussion presentation for Board Meetings and whether Shanahan told Bettman that "we

have a problem" regarding concussions.  (PRN 33 at NHL0033468.)  They discuss

shoulder pads at one point, with Campbell stating,

> Gary B told me yesterday that we had a problem when I said it wasn't as bad
> as people were making it out to be.  Our blind side hits causing concussions
> were dramatically down.  I asked [Gary] Meagher [the NHL's Executive
> Vice President of Communications] if Gary was being beat down by the
> media.  He said he asked the group in the Monday morning meeting and you
> had mentioned that we had a problem.  Don't kill the messenger (Meagher).
> I wondered why Gary was so adamant.  You need to look at the DVDs of all
> the concussions this year.

(Id. at NHL0033467.)  While Defendant contends that this document concerns a

discussion of recent rule changes involving blind side hits and potential changes to

equipment regulations (Def.'s Opp'n Mem. at 13-14 [Doc. No. 362]), nothing in this

document reflects any such policy-laden discussions.  There is no such mention of rules or

rule changes.  Accordingly, the Court respectfully disagrees with the magistrate judge's

determination.  The document shall not be designated "Protected" under the Amended

Protective Order.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' Appeal of Confidentiality Rulings [Doc. No. 340] in the

   Magistrate Judge's Order of December 9, 2015 [Doc. No. 315] is

   **GRANTED in part**, **DENIED in part**, and **DENIED AS MOOT in part**;

2. The Order of December 9, 2015 [Doc. No. 315] is **AFFIRMED in part and**

   **REVERSED in part**;

3.      On or before April 3, 2016, the parties shall confer and send a joint letter to

the Court (or separate letters if they cannot agree) indicating those portions

of the Order, if any, that should remain under seal and the rationale for

maintaining those portions under seal.

Dated:    March 4, 2016

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge