UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In Re: National Hockey League                MDL No. 14-2551 (SRN/JSM)
Players' Concussion Injury
Litigation

This Document Relates to All Actions         MEMORANDUM OPINION
                                             AND ORDER

Charles S. Zimmerman, Brian Gudmundson, David Cialkowski, and Wm Dane DeKrey, Zimmerman Reed, PLLP, 1100 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402; Bradley C. Buhrow and Hart L. Robinovitch, Zimmerman Reed, PLLP, 14646 North Kierland Boulevard, Suite 145, Scottsdale, Arizona 85254, for Plaintiffs

Stephen G. Grygiel, Steven D. Silverman, and William Sinclair, Silverman, Thompson, Slutkin & White, LLC, 201 North Charles Street, Suite 2600, Baltimore, Maryland 21201, for Plaintiffs

Jeffrey D. Bores, Bryan L. Bleichner, and Christopher P. Renz, Chestnut Cambronne PA, 17 Washington Avenue North, Suite 300, Minneapolis, Minnesota 55401, for Plaintiffs

Janine D. Arno, Kathleen L. Douglas, Stuart A. Davidson, and Mark J. Dearman, Robbins, Geller, Rudman & Dowd, LLP, 120 East Palmetto Park Road, Boca Raton, Florida 33432, and Leonard B. Simon, Robbins, Geller, Rudman & Dowd, LLP, 655 West Broadway, Suite 1900, San Diego, California 92101, for Plaintiffs

Lewis A. Remele, Jr., Jeffrey D. Klobucar, and J. Scott Andresen, Bassford Remele, 33 South Sixth Street, Minneapolis, Minnesota 55402, for Plaintiffs

Thomas Demetrio, William T. Gibbs, and Katelyn I. Geoffrion, Corboy & Demetrio, 33 North Dearborn Street, Chicago, Illinois 60602, for Plaintiffs

Brian D. Penny, Goldman, Scarlato & Karon PC, 101 East Lancaster Avenue, Suite 204, Wayne, Pennsylvania 19087, and Mark S. Goldman, Goldman, Scarlato & Karon, PC, 101 West Elm Street, Suite 360, Conshohocken, Pennsylvania 19428, for Plaintiffs

Vincent J. Esades and James W. Anderson, Heins Mills & Olson, PLC, 310 Clifton Avenue, Minneapolis, Minnesota 55403, for Plaintiffs

David I. Levine, The Levine Law Firm P.C., 1804 Intracoastal Drive, Fort Lauderdale, Florida 33305, for Plaintiffs

Daniel E. Gustafson, David A. Goodwin, and Joshua J. Rissman, Gustafson Gluek, PLLC, 120 South Sixth Street, Suite 2600, Minneapolis, Minnesota 55402, for Plaintiffs

Thomas J. Byrne, Namanny, Byrne, & Owens, APC, 2 South Pointe Drive, Lake Forest, California 92630, for Plaintiffs

Michael R. Cashman and Richard M. Hagstrom, Hellmuth & Johnson, PLLC, 8050 West 78th Street, Edina, Minnesota 55439, for Plaintiffs

Robert K. Shelquist, Lockridge, Grindal, Nauen, PLLP, 100 Washington Avenue South, Suite 2200, Minneapolis, Minnesota 55401, for Plaintiffs

Michael J. Flannery, Cuneo Gilbert & LaDuca, LLP, 7733 Forsyth Blvd., Suite 1675, St. Louis, Missouri, 63105, for Plaintiffs

Shawn M. Raiter, Larson King, 30 East Seventh Street, St. Paul, Minnesota, 55101, for Plaintiffs

Daniel J. Connolly, Joseph M. Price, Linda S. Svitak, and Aaron D. Van Oort, Faegre Baker Daniels, LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402; John H. Beisner, Jessica D. Miller, and Geoffrey M. Wyatt, Skadden, Arps, Slate, Meagher & Flom LLP, 1440 New York Avenue, Northwest, Washington, D.C. 20005-2111; Shepard Goldfein, James A. Keyte, Matthew M. Martino, and Michael H. Menitove, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036; Matthew Stein, Skadden, Arps, Slate, Meagher & Flom, LLP, 500 Boylston Street, Boston, Massachusetts 02116; Joseph Baumgarten and Adam M. Lupion, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, for Defendant.

Peter Walsh, Hogan Lovels US LLP, 80 South Eighth Street, Minneapolis, Minnesota 555402-2113, David Newmann, Stephen A. Loney, Hogan Lovells US LLP, 1835 Market Street, Philadelphia, PA 19103 for The Chubb Corporation.

_____

SUSAN RICHARD NELSON, United States District Court Judge

   This matter is before the Court[1] on Plaintiffs' Motion to Enforce Subpoena to the Chubb Corporation [Docket No. 381]. For the reasons set forth herein, Plaintiffs' motion is granted in part and denied in part.

---

[1] This motion was also heard by Magistrate Judge Janie S. Mayeron.

**I.   BACKGROUND**

Non-party Chubb Corporation ("Chubb") has provided workers' compensation benefits for National Hockey League Clubs since 1994. (See Pls.' Mem., p. 1 [Docket No. 383]). Plaintiffs served a subpoena on Chubb on April 20, 2015, seeking documents concerning workers' compensation claims by hockey players for head trauma or brain disease[2] for the period January 1, 1967 through the present. (Penny Decl., Ex. A). Chubb objected to the subpoena on the grounds that it sought documents subject to "privacy law" governing the disclosure of personal information and the burden and expense to Chubb of responding. (Id., Ex. B, Chubb's Objections and Responses to Plaintiffs' Non-Party Subpoena). Plaintiffs amended their request to seek only the medical examinations submitted in connection with concussion injury claims by retired NHL players. (Pls.' Mem., p. 3). Plaintiffs proposed anonymizing the records, but Chubb sought a medical release authorizing the production from each retired player whose file might be produced. (Id., p. 4). Plaintiffs then moved to compel Chubb's compliance with the subpoena and sought unredacted versions of the medical examinations. (Id., pp. 4-5).

Chubb opposed the motion, arguing that the information was not relevant; plaintiffs had failed to establish that they had a compelling need for the information; the medical examinations of the non-party players were protected from disclosure based on "a variety of constitutional, statutory and common law privacy protections;" and the subpoena placed a significant economic burden on Chubb. (See Chubb's Mem., pp. 10-25 [Docket No. 418]). Chubb also submitted that

---

[2]   The subpoena defined "head trauma" as "any trauma to the head including concussive impacts, sub-concussive impacts, Mild Traumatic Brain Injury ("MTBI"), Traumatic Brain Injury ("TBI"), and any other blunt trauma head injury." (Penny Decl., Ex. A, subpoena duces tecum served on Chubb [Docket No. 384-1]). "Brain disease" was defined as "any of the following: Alzheimer's Disease, Parkinson's Disease, amyotrophic lateral sclerosis ("ALS"), post-concussion syndrome, neurological deficit, cognitive impairment, dementia, or chronic traumatic encephalopathy ("CTE")." Id.

not providing advance notice to the non-party players and giving them an opportunity to object precluded the discovery that plaintiffs sought. (Id., p. 22).

At the motion hearing on March 29, 2016, plaintiffs' attorney clarified that plaintiffs were limiting their requests to independent medical exams ("IMEs") of NHL retirees, which had specifically been conducted to substantiate either a workers' compensation claim or in connection with follow-on litigation from a workers' compensation claim. Plaintiffs' counsel further clarified that plaintiffs were not seeking any underlying medical records referenced in the IMEs and that identifying information could be redacted and "de-identified." (See Partial Hearing Tr. dated March 29, 2016, pp. 70, 73, 85-86 [Docket No. 436]).

Suffice it to say, plaintiffs disagreed with Chubb's reasons for objecting to the production of the requested IMEs. As to whether the NHL retirees were entitled to notice of the subpoena seeking production of their IMEs and an opportunity to object prior to Chubb's production, plaintiffs contended that no notice was required – first, the physician-patient privilege did not attach to the IMEs, which were not conducted for treatment or in a confidential setting, and second, there are no privacy rights associated with these reports, which are disseminated to a variety of third parties. (Id., pp. 76-79, 81). Further, even if there were privacy interests to address, those interests are resolved by redaction of the identifying information in the IMEs. (Id., p. 85).

At the conclusion of the motion hearing, the Court stated:

> [I] want to reach, in the case of Chubb, the same balance I reached in the case of any third-party in this case, and that is to respect their concerns for privacy and burden but to allow some production in this case because the Court is of the view that these documents could be very highly relevant to this litigation. And production would have to be limited to IMEs. Even with that said, there are portions of the IMEs that would have to be redacted. The Court is

> not persuaded that IMEs enjoy patient-physician privileges, but I do think there are privacy concerns.

(Id., p. 115). The Court also indicated that any production of IMEs would be pursuant to a HIPPA-compliant protective order. (Id., p. 116).

The Court directed the parties to work with Magistrate Judge Mayeron on the issues raised in the motion regarding the burden and expense associated with compliance of the subpoena. The Court took under advisement the issue of whether the retirees were entitled to advance notice of the request for their IMEs.

After several conferences with Magistrate Judge Mayeron, on July 1, 2016, Chubb and plaintiffs notified the Court that they had reached an agreement regarding the scope of Chubbs' production of IMEs to plaintiffs and payment of the costs associated with the production.[3]

However, no agreement was reached on the need for advance notice to the NHL retirees, and the parties were ordered to provide supplemental briefing on the topic. (See Order dated May 11, 2016 [Docket No. 481]). Consequently, this Order addresses the only remaining issue raised by plaintiffs' motion to enforce the subpoena – whether notice and an opportunity to object must be given to those NHL retirees whose IMEs have been requested by plaintiffs prior to their production.

In its supplemental brief, Chubb contended that NHL retirees' constitutional privacy rights are implicated by plaintiffs' subpoena for their medical information, and thus, procedural due process requires that they receive notice and an opportunity to object prior to production of

---

[3] In exchange for Chubb's agreement to withdraw its request that plaintiffs pay for the costs of complying with the subpoena, plaintiffs agreed that Chubb could limit its search for IMEs to those identified in 91 files of Chubb's digital claims notes system within the "six-month interval" category (i.e. where the interval between date of injury and date of claim was at least six months). Chubb also agreed to manually review seven paper files it had previously located to determine if the paper files contained IMEs.

their IMEs to plaintiffs. In support, Chubb relied on cases within the Third Circuit,[4] where plaintiffs served their subpoena, and outside the Third Circuit.[5] (See Chubb Suppl. Mem., pp. 1-4 [Docket No. 488]).

Additionally, Chubb submitted that redaction of the identifying information in the IMEs does not obviate the need for advance notice before production. (Id., pp. 4-5 (citing Northwestern Mem. Hosp. v. Ashcroft, 362 F.3d 923, 929 (7th Cir. 2004); Westinghouse Elec. Corp., 638 F.2d at 580; Graham, 991 So. 2d at 933)).

In Westinghouse, the court ordered the federal agency seeking access to employee medical records to give prior notice to the affected employees so that they could raise a personal claim of privacy, if they desired. 638 F.2d at 581. According to Chubb, under Westinghouse, even a strong societal interest in disclosure of personal medical information did not trump the employees' due process rights. (Chubb's Supp. Mem., p. 3).

Plaintiffs, on the other hand, contended that no prior notice to the affected NHL retirees was warranted or required, where there was no Constitutional right to privacy in these reports. (See Pls.' Supp. Mem., p. 1 [Docket No. 500]). In support, plaintiffs argued that where the IMEs were not created in the context of a confidential physician-patient relationship and were intended

---

[4] Doe v. Delie, 257 F.3d 309, 315 (3d Cir. 2001); United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3d Cir. 1980).

[5] Nelson v. NASA, 530 F.3d 865, 879 (9th Cir. 2008), rev'd on other grounds, 562 U.S. 134 (2011); Mann v. Univ. of Cincinnati, Nos. 95-3195, 95-3292, 1997 WL 280188, at *5 (6th Cir. May 27, 1997); Doe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994); A.L.A. v. W. Valley City, 26 F.3d 989, 990 (10th Cir. 1994); Pesce v. J. Sterling Morton High Sch., 830 F.2d 789, 795-98 (7th Cir. 1987); E.E.O.C. v. Serramonte, 237 F.R.D. 220, 223-25 (N.D. Cal. 2006); Laba v. Lockheed Martin IMS Corp., No. CIV. A. 97-926, 1998 WL 187800, at *1-2 (E.D. La. Apr. 20, 1998); Erie Bottling Corp. v. Donovan, 539 F. Supp. 600, 607 (W.D. Pa. 1982); San Diego Trolley, Inc. v. Superior Court, 105 Cal. Rptr. 2d 476, 481-82 (Cal. Ct. App. 2001); Graham v. Dacheikh, 991 So. 2d 932, 933 (Fla. Dist. Ct. App. 2008); King v. State, 535 S.E.2d 492, 496-97 (Ga. 2000).

to be shared with others and even with adverse parties (i.e. in the context of a workers' compensation claim), the retirees had no reasonable expectation of privacy to support a constitutional privacy claim. (Id., pp. 1-3 (citing Doe v. Luzerne County, 660 F.3d 169, 176 (3d Cir. Pa. 2011); also citing Malleus v. George, 641 F.3d 560, 564 (3d Cir. Pa. 2011); Van Zee v. Hanson, 630 F.3d 1126, 1128 (8th Cir. 2011); Falvo v. Owasso Indep. Sch. Dist. No. I-011, 233 F.3d 1203, 1208-09 (10th Cir. Okla. 2000), rev'd on other grounds, 534 U.S. 426, 151 L. Ed. 2d 896, 122 S. Ct. 934 (2002)).

Plaintiffs distinguished Westinghouse on the grounds that the employees were unaware before the creation of their medical records that the records might be disclosed to third parties, whereas here, the retired players underwent IMEs knowing that the information would be disclosed to third parties. (Id., pp. 2-3 (citing Westinghouse, 638 F.3d at 580-81). Further, plaintiffs maintained that the vast majority of courts addressing privacy interests in medical records have acknowledged that redaction of records cures any privacy concerns. (Id. (citing Amente v. Newman, 653 So. 2d 1030, 1032 (Fla. 1995); also citing Adelman v. BSA, 276 F.R.D. 681, 695 (S.D. Fla. 2011); United States v. Stevens, 2008 U.S. Dist. LEXIS 123464, *26 (D.D.C. Dec. 19, 2008); Wei v. Bodner, 127 F.R.D. 91, 98 (D.N.J. 1989); Tiller v. Corrigan, 286 Kan. 30, 48 (Kan. 2008)). Plaintiffs again distinguished Westinghouse, noting that while the Government had agreed to redact the names and addresses of individuals in its publicly released compilation of data, unlike here, Westinghouse was being asked to produce each employee's "entire medical file" to the Government in unredacted form. (Id., pp. 4-5 (citing Westinghouse, 638 F.3d at 580-81)).

## II. DISCUSSION

The Court finds that plaintiffs are entitled to production of the anonymized versions of the IMEs in Chubb's possession, pursuant to the Protective Order in place, without prior notice to the non-party NHL retiree players before the records are produced to plaintiffs. As an initial matter, as the parties well know, this Court has already found that anonymizing medical records was sufficient to protect the competing needs of plaintiffs to access the players' medical information and the "understandable, serious concerns of the U.S. Clubs and Defendant about the confidential nature of the requested information." (See Mem. Order and Op. dated July 31, 2015 p. 22 [Docket No. 196]). That order addressed non-party U.S. NHL Clubs objections to a subpoena by plaintiffs seeking players' medical records on grounds of medical privacy and burden. The Court recognized the confidential nature of the requested discovery and required that it could only be disclosed pursuant to the HIPPA-compliant Amended Protective Order [Docket No. 140]. (Id., p. 24). In addition, by requiring the de-identification of certain identifying fields of information, the Court determined that privacy concerns in those records had been ameliorated. (Id., pp. 22, 25 (citing United States ex. rel. Roberts v. QHG of Ind., Inc., 1:97-CV-174, 1998 U.S. Dist. LEXIS 23512, at *29-30 (N.D. Ind. Oct. 8, 1998) ("[T]he privacy interests of a patient in his or her medical records is tied to identity information contained in the records. Once the identifying information is removed from the record, the patient's privacy interest is essentially eliminated.") (citations omitted)). The result is no different here. Any alleged interests of privacy[6] in the contents of the IMEs are "essentially eliminated" when the IMEs are anonymized. (See, id., pp. 22-23).

---

[6] Courts around the country have reached different conclusions as to whether medical records are governed by a Constitutional right to privacy and associated due process protections. Compare Mann, 114 F.3d at *3 (noting that the Sixth Circuit has consistently rejected claims that

8

Second, the Court finds it highly significant that the records at issue here are IMEs, not medical records generated by a physician in a confidential relationship with his or her patient and in the furtherance of diagnosis and treatment of that patient. By their very nature, these IMEs are the product of an inherently adversarial relationship between the claimant who is seeking workers' compensation benefits and his employer's insurer, Chubb, which is charged with the responsibility of assessing the claim and ultimately deciding whether to pay or deny benefits. Claimants who are seeking workers' compensation benefits know from the outset that the results of their IME will be shared with others at Chubb and most likely with their employer.

Westinghouse, relied upon so heavily by Chubb, does not dictate a different result. Critically, Westinghouse did not involve IMEs – it dealt with medical records of the employees in possession of Westinghouse. Additionally, an important factor in the Third Circuit's decision to require notice was the employees' lack of awareness that their medical records might be viewed by others. 638 F.2d at 581. Such is not the case here. Also, significant to this Court's determination are the factors the Third Circuit identified that a court should consider in deciding whether an intrusion into an individual's privacy is justified. Id. at 578. These factors are: 1) the type of record requested; 2) the information it does or might contain; 3) the potential for harm in subsequent, nonconsensual disclosure; 4) the injury disclosure would inflict on the relationship in which the record was generated; 5) the adequacy of the safeguards to prevent unauthorized disclosure; 6) the degree of need for access; and 7) whether there is an express statutory

---

medical records enjoy Constitutional protection) with Westinghouse, 638 F.2d at 570 (medical records are subject to a Constitutional right to privacy). See also Doe v. Beard, 63 F. Supp. 3d 1159, 1171, n.4 (C. D. Cal. 2014) (gathering cases in which courts have recognized a Constitutional right to privacy in medical records); Sherman v. Jones, 258 F.Supp.2d 440, 443 (E.D.Va.2003) ("[T]he Fourth Circuit has also declined invitations to declare a constitutional right to privacy in one's personal medical information."). While this Court has serious reservations about concluding that IMEs trigger a Constitutional right of privacy, for the purposes of this decision, it assumes they do.

mandate, public policy or "other recognizable public interest militating toward access."  Id. Applying those factors to the instant motion supports this Court's conclusion that the IMEs should be produced.  First, as the Court has already noted, at issue are fully anonymized IMEs and not medical records.  Second, the HIPPA-compliant Protective Order pursuant to which the IMEs will be produced does not allow unauthorized disclosure and thus, provides an adequate safeguard.  Third, there is no on-going relationship between an IME-examining physician and a workers' compensation claimant, so there is no relationship to injure.  Fourth, plaintiffs have established the relevance and need for this information, and fifth, there clearly is a strong public interest in the health and safety of hockey players.

In short, the issues that led the Westinghouse court to conclude that prior notice was required – whether records containing physician-patient confidences should be produced to the Government when the employees had no prior knowledge that all of the records in their files may be disclosed – are not present in this motion.

Likewise, the other cases on which Chubb has relied do not dictate a different result. Mann was an appeal of a sanctions order that has no application to the instant motion.  King, Erie Bottling Corp., Serramonte and Laba all dealt with the disclosure of medical records, not IMEs. Graham addressed the disclosure of IMEs, but within the context of a Florida state statute that required that notice be given before the IMEs of non-parties could be disclosed.  Nelson related to the forced disclosure of employees' drug use history; Doe and A.L.A. addressed the Constitutional right to privacy in one's HIV status; Pesce discussed generally Federal Constitutional privacy rights in the context of a school psychologist's records regarding child sexual abuse.  These cases did not provide any compelling authority for Chubb's position regarding notice.

The Court concludes that requiring the IMEs be produced pursuant to a HIPPA-compliant Protective Order and requiring that they be anonymized, sufficiently addresses Chubb's concerns about any privacy rights a retiree may assert in this information. No underlying medical records shall be produced. Chubb shall redact all personal identifying information of the retiree from the IMEs (e.g. name, date of birth, address, Social Security number), as well as any information that could identify the player, such as team, current occupation, and the exact date of the injury. Any questions regarding whether any particular items of information in an IME could lead to the identification of the retiree shall be presented to Magistrate Judge Mayeron for resolution.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

Plaintiffs' Motion to Enforce Subpoena to the Chubb Corporation [Docket No. 381] is **GRANTED** in part and **DENIED** in part, as set forth herein.


Dated: July 13, 2016                                s/Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Court Judge