# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: National Hockey League Players' Concussion Injury Litigation | MDL No. 14-2551 (SRN/BRT) |
| This Document Relates to All Actions | MEMORANDUM OPINION AND ORDER |

---

Charles S. Zimmerman, Brian Gudmundson, David Cialkowski, and Wm Dane DeKrey, Zimmerman Reed, PLLP, 1100 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402; Bradley C. Buhrow and Hart L. Robinovitch, Zimmerman Reed, PLLP, 14646 North Kierland Boulevard, Suite 145, Scottsdale, Arizona 85254, for Plaintiffs

Stephen G. Grygiel, Steven D. Silverman, and William Sinclair, Silverman, Thompson, Slutkin & White, LLC, 201 North Charles Street, Suite 2600, Baltimore, Maryland 21201, for Plaintiffs

Jeffrey D. Bores, Bryan L. Bleichner, and Christopher P. Renz, Chestnut Cambronne PA, 17 Washington Avenue North, Suite 300, Minneapolis, Minnesota 55401, for Plaintiffs

Janine D. Arno, Kathleen L. Douglas, Stuart A. Davidson, and Mark J. Dearman, Robbins, Geller, Rudman & Dowd, LLP, 120 East Palmetto Park Road, Boca Raton, Florida 33432, and Leonard B. Simon, Robbins, Geller, Rudman & Dowd, LLP, 655 West Broadway, Suite 1900, San Diego, California 92101, for Plaintiffs

Lewis A. Remele, Jr., Jeffrey D. Klobucar, and J. Scott Andresen, Bassford Remele, 33 South Sixth Street, Minneapolis, Minnesota 55402, for Plaintiffs

Thomas Demetrio, William T. Gibbs, and Katelyn I. Geoffrion, Corboy & Demetrio, 33 North Dearborn Street, Chicago, Illinois 60602, for Plaintiffs

Brian D. Penny, Goldman, Scarlato & Karon PC, 101 East Lancaster Avenue, Suite 204, Wayne, Pennsylvania 19087, and Mark S. Goldman, Goldman, Scarlato & Karon, PC, 101 West Elm Street, Suite 360, Conshohocken, Pennsylvania 19428, for Plaintiffs

Vincent J. Esades and James W. Anderson, Heins Mills & Olson, PLC, 310 Clifton Avenue, Minneapolis, Minnesota 55403, for Plaintiffs

David I. Levine, The Levine Law Firm P.C., 1804 Intracoastal Drive, Fort Lauderdale, Florida 33305, for Plaintiffs

Daniel E. Gustafson, David A. Goodwin, and Joshua J. Rissman, Gustafson Gluek, PLLC, 120 South Sixth Street, Suite 2600, Minneapolis, Minnesota 55402, for Plaintiffs

Thomas J. Byrne, Namanny, Byrne, & Owens, APC, 2 South Pointe Drive, Lake Forest, California 92630, for Plaintiffs

Michael R. Cashman and Richard M. Hagstrom, Hellmuth & Johnson, PLLC, 8050 West 78th Street, Edina, Minnesota 55439, for Plaintiffs

Robert K. Shelquist, Lockridge, Grindal, Nauen, PLLP, 100 Washington Avenue South, Suite 2200, Minneapolis, Minnesota 55401, for Plaintiffs

Shawn M. Raiter, Larson King, LLP, 30 East Seventh Street, Suite 2800, St. Paul, Minnesota 55101, for Plaintiffs

Charles J. LaDuca, Cuneo, Gilbert & LaDuca, LLP, 8120 Woodmont Avenue, Suite 810, Bethesda, Maryland 20814, for Plaintiffs

Daniel J. Connolly, Joseph M. Price, Linda S. Svitak, and Aaron D. Van Oort, Faegre Baker Daniels, LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402; John H. Beisner, Jessica D. Miller, and Geoffrey M. Wyatt, Skadden, Arps, Slate, Meagher & Flom LLP, 1440 New York Avenue, Northwest, Washington, D.C. 20005-2111; Shepard Goldfein, James A. Keyte, Matthew M. Martino, and Michael H. Menitove, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036; Matthew Stein, Skadden, Arps, Slate, Meagher & Flom, LLP, 500 Boylston Street, Boston, Massachusetts 02116; Joseph Baumgarten and Adam M. Lupion, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, for Defendant

---

SUSAN RICHARD NELSON, United States District Judge.

This matter is before the Court on Plaintiffs' Motion to Exclude Declarations of Defendant's Experts for Purposes of Plaintiffs' Motion for Class Certification.  (Doc. No. 872, "Plaintiffs' Motion to Exclude".)  The Court held a hearing on Plaintiffs' Motion to Exclude on July 11, 2017.  (Doc. No. 882, Min. Entry for Formal Status Conf.

and Mot. Hr'g; Doc. No. 887, Tr. of Status Conf. and Mot. Hr'g.)  For the reasons set

forth herein, Plaintiffs' Motion to Exclude is granted in part and denied in part.

## I.    Background

### A.    Motion for Class Certification and Disclosure of Experts[1]

Plaintiffs filed their Motion to Certify Class and for Appointment of Class

Representatives and Class Counsel on December 8, 2016.  (Doc. No. 638.)  Plaintiffs also

filed the declarations of their experts, Dawn R. Comstock, D'Arcy Jenish, Stephen T.

Casper, Thomas Blaine Hoshizaki, and Robert C. Cantu.  (Doc. Nos. 642–46.)  On

April 27, 2017, Defendant filed its Memorandum in Opposition to Plaintiffs' Motion to

Certify Class and for Appointment of Class Representatives and Class Counsel.  (Doc.

No. 787.)[2]  The same day, Defendant moved to exclude all of Plaintiffs' experts under

---

[1]    The parties proposed a Schedule Regarding Issues Related to Class Certification along with their Rule 26(f) Report.  (Doc. No. 50-4.)  The Court then adopted Pretrial Order No. 8, Schedule Regarding Issues Related to Class Certification, governing deadlines related to class certification.  (Doc. No. 69.)  A Revised Schedule Regarding Issues Related to Class Certification was issued on November 6, 2015.  (Doc. No. 296.)  Another Revised Schedule amended deadlines and also modified the provisions relating to rebuttal expert reports.  (Doc. No. 555 ("If Plaintiffs conclude that rebuttal expert reports are necessary (not "new" expert reports but true "rebuttal" expert reports) and choose to file them with their reply brief, the NHL may seek leave of the Court to file a sur-reply and/or take additional deposition testimony.  At that time, the Court will consider the nature of the rebuttal expert testimony and whether further discovery and briefing is warranted.").)  A Second Revised Schedule Regarding Issues Related to Class Certification and Amended Pretrial Order No. 22 was issued on September 8, 2016, as Pretrial Order No. 22, modifying deadlines and the hearing date.  (Doc. Nos. 604 and 605.)

[2]    The Court's Amended Pretrial Order No. 22, Second Revised Schedule Regarding Issues Related to Class Certification, required Defendant to "file its memorandum in opposition to class certification on or before April 27, 2017.  In its memorandum, the

(Footnote Continued on Next Page)

3

Rule 702 and Daubert.  (Doc. Nos. 755 (Jenish), 761 (Casper), 767 (Cantu), 772

(Comstock), and 781 (Hoshizaki).)  With these filings, Defendant disclosed a total of

nineteen experts "in support of Defendant NHL's Opposition To Plaintiffs' Motion For

Class Certification And For Appointment Of Class Representatives And Class Counsel

and in support of the NHL's contemporaneously filed motions to exclude the testimony

of plaintiffs' experts."[3]

### B.    Plaintiffs' Motion to Exclude Expert Declarations for Purposes of Plaintiffs' Motion for Class Certification

At a formal status conference held on May 12, 2017, Plaintiffs raised concerns

about the number of experts Defendant had disclosed.  (Doc. No. 861, Transcript of

5/12/17 Status Conference 9–12, 26–29.)  In particular, Plaintiffs argued that Defendant's

---

(Footnote Continued From Previous Page)
NHL shall identify all experts and witnesses upon whom it relies in opposition to
plaintiffs' motion (including the information contemplated by Fed. R. Civ. P. 26(a)(2)(B)
as to experts) and file as exhibits any expert reports or affidavits upon it relies."  (Doc.
No. 605, ¶ 3.)

[3]      (See Doc. No. 732, Attachments 1–11 (Exhibits A-Decl. of Lisa A. Brenner; B-
Decl. of John David Cassidy; F-Decl. of Dr. James R. Funk; G-Decl. of Kevin
Guskiewicz; I-Decl. of Grant L. Iverson; J-Expert Report of Sonya Kwon; K-Decl. of
Paul R. McCrory; L-Decl. of Douglas B. McKeag; M-Decl. of William Neale; Q-Decl. of
Dr. Matthew Panzer; and R-Decl. of Christopher Randolph);  see also Doc. Nos. 733–36,
738–42, 744–49 (Sealed and Redacted Versions of Exhibits C-Decl. of Rudolph J.
Castellani; D-Suppl. Decl. of Jennifer Finkel; H-Decl. of Lili-Naz Hazrati; N-Reports of
Neuropsychological Examinations of Individual Plaintiffs Conducted by Dr. Marc
Norman; O-Suppl. Decl. of C. Warren Olanow; S-Decl. of Joseph B. Sala; T-Decl. of
Julie Ann Schneider; U-Decl. of Kristine Yaffe).)  Dr. Olanow and Dr. Finkel also
conducted individual medical evaluations of proposed class representative plaintiffs.  The
reports of these evaluations were filed separate from their declarations. (Doc. No. 737,
Beisner Decl. Ex. E; Doc. No. 743, Beisner Decl. Ex. P.)  They are not at issue in
Plaintiffs' Motion to Exclude.

disclosure of nineteen experts was disproportionate to their own disclosure of five, and "the number of experts that were filed in connection with the class certification motion are cumulative and duplicative in many respects." (Id. at 10–11.) After the status conference, the Court issued a briefing schedule on Plaintiffs' "motion to strike expert reports" and set a hearing for July 11, 2017. (Doc. No. 867.) The Court also issued an order extending the time for Plaintiffs' responses to the Defendant's Daubert motions until September 8, 2017; extending the time for Defendant's Reply in support of its Daubert motions until October 6, 2017; extending the time for Plaintiffs' Reply in support of their Motion for Class Certification to October 6, 2017; and setting the hearing on these motions for October 11, 2017. (Doc. No. 882.)

Plaintiffs timely filed their Motion to Exclude. (Doc. No. 872.) Plaintiffs argue that an unspecified number of Defendant's expert declarations should be excluded because the Court should not be burdened or inconvenienced with the task of sorting through nineteen expert reports at the class certification stage. (Doc. No. 887, Transcript of 7/11/17 Status Conference 14–15.) Framing their arguments around thirteen class certification "issues," Plaintiffs ask the Court to determine that Defendant's nineteen expert declarations are cumulative or not relevant in the context of a motion for class certification; require Defendant to designate one expert on each of the thirteen class certification issues; and exclude such portions of Defendant's expert declarations that do not fall within those parameters. (Doc. No. 873, Pls.' Mem. in Supp. of Mot. to Excl. 25.)

In opposition, Defendant argues that its expert opinions are not cumulative, but

5

even if they are, Plaintiffs' motion is premature because concerns about cumulative

evidence relate to the presentation of evidence to a jury at trial, not to a court when

deciding class certification.  (Doc. No. 881, Def.'s Mem. in Opp. to Pls.' Mot. to Excl. 1–

2, 5–38.)  Defendant also argues Plaintiffs' proposed rule that only one expert be allowed

to speak on any issue is both prejudicial and impracticable because it would mean that

Defendant and Plaintiffs would have to submit new expert declarations.  Moreover,

Defendant argues that Plaintiffs themselves offered multiple experts on a range of issues.

(Id. at 2–5, 35, 39, 44–46.)  Finally, even if some of Defendant's expert opinions relate to

merits issues, Defendant argues this offers no justification to strike because class and

merits issues often overlap for purposes of the Court's rigorous class certification

analysis.  (Id. at 3, 39–44.)

## II.    Discussion

### A.    The Court's Inherent Authority

Trial courts have "inherent authority and broad discretion to exclude cumulative

expert testimony, if it is not done 'arbitrarily, or on the basis of mere numbers.'"  Olsen

v. Delcore, No. 07-CV-334 TS, 2009 WL 3055408, at *1 (D. Utah Sept. 24, 2009) (citing

Nalder v. West Park Hosp., 254 F.3d 1168, 1173 (10th Cir. 2001)).  Rule 403 of the

Federal Rules of Evidence, in conjunction with this inherent authority, provides "another

basis to exclude cumulative or duplicative expert witnesses."  Id.; Fed. R. Evid. 403

("The court may exclude relevant evidence if its probative value is substantially

outweighed by a danger of . . . needlessly presenting cumulative evidence.").  The

discretion to exclude or strike expert testimony can be used at any stage of the

proceedings, not just at trial.  See, e.g., Aetna Cas. & Sur. Co. v. Guynes, 713 F.2d 1187,

1193 (5th Cir. 1983) (explaining that a trial judge "can exercise this discretion before

trial").

      The Court's consideration of Plaintiffs' Motion to Exclude and its exercise of

discretion takes into account the district court's obligation to undertake a "rigorous

analysis" when it considers class certification to ensure that the requirements of Rule 23

are met.  Bennett v. Nucor Corp., 656 F.3d 802, 814 (8th Cir. 2011).  "Frequently that

'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying

claim, and the district court may resolve disputes going to the factual setting of the case if

necessary to the class certification analysis."  Id. (citing Wal-Mart Stores, Inc. v. Dukes,

564 U.S. 338, 351 (2011) and Blades v. Monsanto Co., 400 F.3d 562, 567 (8th Cir.

2005)).  Therefore, "[e]xpert disputes 'concerning the factual setting of the case'" must

be resolved "to the extent 'necessary to determine the nature of the evidence that would

be sufficient, if the plaintiff's general allegations were true, to make out a prima facie

case for the class.'"  In re Zurn Pex Plumbing Prods. Liability Litig., 644 F.3d 604, 611

(8th Cir. 2011) (quoting Blades, 400 F.3d at 567).  As the Second Circuit has explained,

> To avoid the risk that a Rule 23 hearing will extend into a protracted
> mini-trial of substantial portions of the underlying litigation, a
> district judge must be accorded considerable discretion to limit both
> discovery and the extent of the hearing on Rule 23 requirements.

In re IPO Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006).  Later, when considering class

certification, the court will resolve disputes among the varying expert opinions to the

extent that those disputes are relevant to the requirements of Rule 23.  See Blades, 400

F.3d at 575.

### B. Defendant Relies Upon a Subset of Expert Declarations and Opinions in its Memorandum in Opposition to Class Certification

Defendant was required to "file its memorandum in opposition to class certification on or before April 27, 2017," and in that memorandum, required to "identify all experts and witnesses upon whom it relies in opposition to plaintiffs' motion (including the information contemplated by Fed. R. Civ. P. 26(a)(2)(B) as to experts) and file as exhibits any expert reports or affidavits upon it relies." (Doc. No. 605, ¶ 3.) As noted above, Defendant filed a total of nineteen expert reports in connection with its class certification and <u>Daubert</u> motion briefing. While the number of experts disclosed by Defendant is disproportionate to the number disclosed by Plaintiffs, the number does not by itself render the opinions duplicative.

The expert citations in Defendant's Memorandum in Opposition to Class Certification are summarized below:

| Expert | |
|---|---|
| Dr. Kevin Guskiewisz | ¶ 66 |
| Dr. Lilli-Naz Hazrati | ¶¶ 30, 32–33, 40, 48, 52, 70–73, 91 |
| Dr. Grant Iverson | ¶¶ 21, 23, 73–78, 87–88, 134–136, 137–43, 151 |
| Ms. Sonya Kwon | Report at 9–10 |
| Dr. Paul McCrory | ¶¶ 43, 96–97 |
| Dr. Douglas B. McKeag | ¶ 23 |
| Dr. Lisa A. Brenner | ¶¶ 50, 63, Brenner Table 1 |
| Dr. John David Cassidy | ¶¶ 19, 21, 23, 27, 31, 61, 119–20 |
| Dr. Rudolph J. Castellani, Jr. | ¶¶ 21, 25, 26, 69, 70, 77–82, 102, 104, 109, 113, 117, 119, 127, 133–34[4] |
| Dr. Christopher Randolph, | ¶¶ 25(d)(ii), 27 |

---

[4] There are no corresponding paragraphs 133–34 in Castellani's Declaration.

| Dr. Joseph B. Sala | ¶¶ 16, 38, 40 |
| Dr. Julie Ann Schneider | ¶¶ 37–38 |
| Dr.  Kristine Yaffe | ¶¶ 14, 22, 39, 42–61, 71 |
| Dr. Matthew Panzer | ¶¶ 14, 23 |
| Dr. Jennifer Finkel | ¶¶ 14(a), 14(c),15, 17–21, 24–28, 57 |
| Dr. Warren Olanow | ¶¶ 21, 34–37, 39, 46, 58–82, 92, 94 n.92, 95–96, 99 |

Defendant did not identify Drs. Norman, Funk, or Mr. Neale in its Opposition to Class Certification.  Accordingly, Plaintiffs' Motion to Exclude is granted in part to make clear that Plaintiffs need not rebut the opinions of Drs. Norman and Funk, or Mr. Neale for purposes of class certification.  That leaves sixteen experts for Plaintiffs to consider for purposes of class certification.

Plaintiffs do not seek to exclude the opinions of two of those sixteen experts—Dr. Joseph Sala or Ms. Sonya Kwon.  Because Plaintiffs do not contend that these declarations overlap or are duplicative, and they are not at issue in Plaintiffs' motion, they are not excluded for purposes of class certification.

### C.     Defendant's Reliance on Expert Opinions to Support Defendant's Daubert Motions

Separate and apart from its Opposition to Class Certification, Defendant also relies upon most of the same pool of experts and the same declarations to support its Daubert motions.[5]  For example, for purposes of Defendant's Daubert motions, Defendant relies upon Drs. Brenner, McKeag, Cassidy, Yaffe, McCrory, Guskiewicz, Iverson, Randolph,

---

[5]     Defendant moved to exclude the expert testimony of Jenish (Doc. No. 755), Casper (Doc. No. 761), Cantu (Doc. No. 767), Comstock (Doc. No. 772), and Hoshizaki (Doc. No. 781).  Defendant's Daubert motions will be heard with Plaintiffs' Motion for Class Certification.

Funk, Panzer, Olanow, Ms. Kwon, and Mr. Neale. Plaintiffs will need to address the opinions of these experts in their responsive briefing. This Order does not address the parties' <u>Daubert</u> motions or responses to <u>Daubert</u> motions.

**D.    The Court's Review of the Experts Relied Upon by Defendant Shows Little Overlap**

Plaintiffs organized their Memorandum in Support of their Motion to Exclude around thirteen class certification issues, arguing that Defendant's expert declarations overlap on these issues. The Court has carefully reviewed Plaintiffs' arguments that certain sections of Defendant's expert declarations are duplicative or cumulative on each of the issues. In addition, the Court carefully reviewed the expert opinions identified in Defendant's Opposition to Class Certification. As discussed below, the Court finds insufficient overlap to warrant limiting the experts or excluding all or part of the Defendant's expert declarations for purposes of class certification. And to the extent there is overlap, Plaintiffs' burden to rebut duplicative opinions is outweighed by the burden Defendant would face if required to revise its expert declarations and opinions.

**<u>Issue 1</u>: The Lack of Causation from Case Studies (Brenner, Cassidy, Castellani, Guskiewicz, Hazrati, Iverson, Schneider, and Yaffe)**

Plaintiffs contend that Defendant's disclosure of eight experts to respond to Drs. Cantu and Comstock's discussion of case studies is excessive. In their Motion to Exclude, Plaintiffs identify the following sections of the expert declarations as duplicative: Brenner at Section II A (¶¶ 40–42); Cassidy at Sections V, IX and X (¶¶ 45–78; 95–120; 121–32); Castellani at Section III. C. and Section VI (¶¶ 103–20; 129–30); Guskiewicz (¶¶ 1–80); Hazrati in the section titled "There is No Threshold of Exposure

to Head Trauma that Correlates to Pathology" (¶¶ 29–32); Iverson at Section V. G. (¶¶ 125–32); Schneider at section titled "Limitations of the CTE Studies to Date" (¶¶ 30–50); and Yaffe at Sections D (¶¶ 23–35) and G (¶¶ 36–41).

Within the above sections, however, Defendant cites only to Cassidy ¶¶ 61, 119-20; Castellani ¶¶ 104, 109, 113, 117, 119; Guskiewicz ¶ 66; Hazrati ¶ 30, 32; Schneider ¶¶ 37; and Yaffe ¶ 39.  The Court has carefully reviewed the paragraphs cited to by Defendant and finds some overlap; however, most of the overlap in the relied upon opinions addresses Defendant's general argument regarding the lack of causation from case studies in response to Plaintiffs' argument that "[T]he record of scientific study in concussions, subconcussive blows, and associated NDDCs long ago established the medical and scientific community's knowledge that repetitive head impacts increase the likelihood of chronic neurodegenerative disease."  (Doc. No. 640, Mem. of Law in Supp. of Pls.' Mot. for Class Cert. ("Pls.' Mem.") 13.)  It is not overly burdensome for Plaintiffs to rebut this general opinion.  To the extent Plaintiffs understand the opinion is duplicative, their experts can offer the same rebuttal point if they choose.

The Court has also reviewed Defendant's Opposition to Class Certification and recognizes that multiple experts address certain case studies, articles, or reports.[6]  For example, multiple experts discuss the boxing studies, including Martland. (See Castellani

---

[6]    (See Cassidy ¶¶ 19, 21, 23, 27, 31 (Def.'s Mem. 11 n.16, 12, 15, 19, 84); Castellani ¶¶ 21, 26, 69-70, 77–82, 102 (Def.'s Mem. 7, 8, 10 n.15, 11 n.16, 12); Hazarti ¶¶ 33, 40, 48, 52 (Def.'s Mem. 11 n.16, 12); Yaffe ¶¶ 14, 22, 44, 45, 50, 51, 58, 59, 71 (Def.'s Mem. 11, 16, 19).)  Dr. Olanow also references studies.  (See Olanow Decl. ¶¶ 44, 61, 62, 63, 64, and 65.)

Decl. ¶ 77.)  Dr. Brenner's rebuttal to Casper's discussion of Martland's 1928 article

about "punch drunk" syndrome is duplicative and cumulative of at least Castellani's

rebuttal.  (Def.'s Mem. 7–8.)  And more than one expert refers to the Corsellis study.

(See Iverson Decl. ¶ 78; Castellani Decl. ¶¶ 79–82.)  The multiple references, however,

are relatively minimal.  While there is some overlap, the burden to rebut duplicative

opinions—to the extent opinions are duplicative—is outweighed by the burden Defendant

would face if required to revise its expert declarations and opinions and the delay to these

proceedings.  Plaintiffs are free to offer the same expert rebuttal to opinions regarding

case studies Plaintiffs believe are duplicative.

### Issue 2: Uncertainty About the Pathology and Clinical Presentation of CTE (Castellani, Hazrati, Schneider, Yaffe)

Plaintiffs identify the following areas of overlap relating to this issue:  Castellani

at Section III.A (¶¶ 62–94) and Section IV (¶¶ 121–23); Hazrati in the sections titled

"The Current State of Science is in its Infancy with Respect to CTE Tauopathy," "The

Absence of CTE Tauopathy in Athletes with a History of Concussion," "The Presence of

CTE Pathology in Individuals Without a History of Head Trauma," and "Some Athletes

Have Pathologies Consistent with Multiple NDs that are Common in the General

Population" (¶¶ 33–75); Schneider in the section titled "Current Scientific Understanding

Of CTE" (¶¶ 21–29); and Yaffe at Section G (¶¶ 62–71).

Defendant does not rely upon ¶¶ 21–29 of Schneider's Declaration in its

Opposition to Plaintiffs' Motion for Class Certification.  The remaining experts,

Drs. Castellani, Hazrati, and Yaffe, offer non-duplicative, non-cumulative opinions to

12

support Defendant's Opposition to Class Certification.  Paragraphs 69–70 of Castellani's

Declaration (Def.'s Mem. 10 n.15), for example, discuss the work of a consensus panel

and report, and Castellani ¶¶ 77–82 (Def.'s Mem. 7–8) discuss Martland, reports from the

1960s, and the Corsellis findings.  Paragraphs 30 and 32 of Hazrati (Def.'s Mem. 14)

refer to her own experience and view of the research and case studies.  Paragraph 71[7] of

Yaffe (Def.'s Mem. 11) expresses her view that there is no consensus as to the definition

of CTE.

     While the opinions relied upon by Defendant may address the same subject

areas—including "consensus," case studies, and research—it is not overly burdensome

for Plaintiffs to rebut the opinions on these topics.  To the extent Plaintiffs believe that an

opinion is duplicative, Plaintiffs' experts have the option to offer the same rebuttal point

if they conclude rebuttal expert reports are necessary and choose to file them with their

Reply brief.

### Issue 3: Appropriate Concussion Terminology (Brenner, Iverson, McKeag)

Plaintiffs argue that Brenner at Sections II. B. and C. (¶¶ 43–62), Iverson at

Sections IV. A. and B. (¶¶ 28–60), and McKeag at Section C (¶¶ 15–25) offer duplicative

testimony on concussion terminology.

The only citations from these sections in Defendant's Opposition to Class

Certification are to Brenner at ¶ 50 and McKeag at ¶ 23.  (Def.'s Mem. 19.)  Paragraph

---

[7]    Plaintiffs complain that Dr. Yaffe's Section G of her Declaration, ¶¶ 62–71, is duplicative of other experts. Defendant, however, relies only on ¶ 71.

23 of McKeag states:

> In fact, we still lack a universally accepted definition for subconcussive
> impacts, and in a 2014 article, researchers described subconcussion "as a
> significant emerging concept" that needs "thorough consideration" for the
> role that it could play in causing "anatomical and/or physiological
> damage." While there are some data suggesting that subconcussive impacts
> to the brain may lead to short- and long-term neurological syndromes,
> "[o]ur understanding of these phenomena is still in its infancy and
> evolving." Thus, medical professionals have warned that "[c]aution is
> warranted in interpreting and publicizing 'brain injury' secondary to
> subconcussive blows." This is particularly true because medical providers'
> representation of what is known about this potential risk will have "huge
> implications for society as a whole," including the significant medical and
> career decisions by countless military veterans, athletes of all ages
> (involved in a number of sports ranging from boxing to football to soccer),
> and their families.

Paragraph 50 of Brenner provides:

> Moreover, in the 1928 article by Martland, often cited by Professor Casper,
> the author posited that a "punch drunk" syndrome might be caused by
> "single or repeated blows on the head or jaw which cause multiple
> concussion hemorrhages." It is clear from this account that the
> "concussion" referred to is not the mTBI associated with that term today.
> Rather, as articulated at the beginning of the article, the blows at issue were
> "severe" ones from which it took "a fighter from one to two hours to
> recover" and which, in some cases, resulted in a loss of "consciousness . . .
> for a considerable period of time." As elaborated in a discussion of
> Martland's article in an unsigned editorial in JAMA the following year, the
> acute injuries at issue were akin to those sustained by "persons who die in
> coma from injuries to the head which have left the cranial bones unbroken."

These opinions address arguments made by Plaintiffs, in support of their Motion for

Class Certification, that the "medical and scientific community has known for over 100

years that repeated blows to the head can lead to NDDCs, even if the nomenclature or

theorized cellular and subcellular effects on the brain evolved over the course of the

NHL's existence." (Pls.' Mem. 13.)  These expert opinions are not sufficiently

14

duplicative or cumulative to warrant excluding the expert or corresponding declaration for purposes of class certification.[8]

**Issue 4**: **The Role of Sports Medicine and Influence from Industry (Brenner, McCrory, McKeag)**

As to issue four, Plaintiffs identify Brenner Section II. E. (¶¶ 71–77), McCrory Section titled "Mr. [sic] Casper's Mischaracterization of the History and Benefit of Research Specific to Concussions in Sport" (¶¶ 33–75), and McKeag Section D (¶¶ 26–28) as duplicative on the Role of Sports Medicine and Influence from Industry. Of these paragraphs, Defendant only relies upon paragraph 43 of McCrory. Thus, Defendant does not offer cumulative or duplicative evidence on this issue.

**Issue 5**: **Changes in Historic Knowledge of CTE (Castellani, Iverson, McCrory, Yaffe)**

In their Motion to Exclude, Plaintiffs contend that Castellani Section III. A. 2. (¶¶ 76–85), Iverson Section V. B. (¶¶ 71–101), McCrory Section at page 45 (¶¶ 76–97), and Yaffe Section H (¶¶ 72–79) are duplicative on the issue of historical knowledge of CTE. Again, Defendant does not rely upon most of these paragraphs in their Opposition to Plaintiffs' Motion for Class Certification. The paragraphs relied upon within these sections are Castellani ¶¶ 77–82 (Def.'s. Mem. 7–8), Iverson ¶¶ 73–78, 87–88 (Def.'s. Mem. 7–8, 11 n. 16), and McCrory ¶¶ 96–97 (Def.'s. Mem. 6, 17). Yaffe is not cited.

---

[8]    Plaintiffs do not refer to the "Key Terms" section in Brenner's Declaration at ¶¶ 18–19, including Tables 1 and 2. Table 1 covers several key terms and was cited as a "see also" to Yaffe ¶ 22. (Def.'s. Mem. 19.)

There is some overlap within the paragraphs relied upon. For example, both Castellani and Iverson discuss Corsellis, and McCory refers to boxing studies. As discussed above, however, overlap in case study references are relatively minimal. And while there is some overlap, the burden to rebut duplicative opinions is outweighed by the burden Defendant would face if required to revise its expert declarations and opinions and the delay to these proceedings.

### Issue 6: Changes in Historic Knowledge of Neurological Diseases, Disorders, or Conditions (Brenner, Cassidy)

Plaintiffs claim that Section II. D. (¶¶ 63–70) of Dr. Brenner's Declaration is duplicative of Sections VI–VIII (¶¶ 79–94) of Dr. Cassidy's Declaration. In these sections, Defendant cites only to Brenner ¶ 63 as a "see also" to Finkel at ¶ 28. (Def.'s. Mem. 94.) Paragraph 28 of Finkel's Declaration states:

> The above serve as examples of the rigorous and operationalized processes expert health and scientific organizations conduct prior to their recommendation of new clinical practice guidelines. The medical monitoring program the plaintiffs are proposing represents a new clinical practice guideline that is not supported by scientific evidence.

Paragraph 63 of Brenner's Declaration states:

> It simply is not the case that general concussion research long ago established a definitive link between concussion/mTBI and LTND, as Professor Casper suggests. Rather, research into that posited link is ongoing, and it has not yet reached a point of maturity sufficient to support the development of clear CPGs to guide treatment or medical advice to patients with a history of participating in contact sports.

These paragraphs are cited by Defendant to address Plaintiffs' argument about the merits of its proposed medical monitoring program. (Pls.' Mem. 93–94.) The opinions

expressed at Finkel ¶ 28 and Brenner ¶ 63 are not cumulative or duplicative.

### Issue 7: Medical Ethics and a Duty to Warn (Iverson, McKeag, Olanow)

Section X (¶¶ 162–166) of the Iverson Declaration, Section E of the McKeag Declaration (¶¶ 29–40), and Section IV of the Olanow Declaration (¶¶ 100–106) are identified as cumulative and duplicative.  Defendant, however, does not cite to Iverson, Section X.  Nor does Defendant cite to McKeag Section E or Olanow Section IV in its Opposition to Plaintiffs' Motion for Class Certification.  Thus, Defendant does not rely upon cumulative or duplicative expert testimony on this issue as framed by Plaintiffs. Indeed, it appears that Defendant primarily relies upon Dr. Joseph Sala on warnings and risk. (Def.'s. Mem. 67, 75.)  Plaintiffs do not challenge Dr. Sala.

### Issue 8: The Use of Finite Element Models (Panzer, Funk)

Defendant does not cite to Dr. Funk's Declaration in its Opposition to Class Certification.  Thus, Defendant does not offer cumulative or duplicative evidence on this issue.

### Issue 9: Video Analysis Reliability (Neale, Funk)

As set forth above, Defendant does not rely upon Drs. Funk or Neale for class certification issues.  Defendant does not cite to either declaration in its Opposition to Class Certification.  Plaintiffs need not rebut these declarations for purposes of class certification.

### Issue 10: Minimum Strain Thresholds to Cause Cellular Changes (Funk, Olanow, Schneider)

In its Opposition to Class Certification, Defendant challenges Hoshizaki's

opinion that the average NHL player sustains at least one head hit per two games that causes strain "above the minimum threshold for causing white matter damage." (Def.'s. Mem. 58.) Defendant relies upon Drs. Olanow and Schneider to support its arguments. (Def.'s. Mem. 58–59.)

Plaintiffs complain that ¶¶ 72–73 of Dr. Olanow's Declaration are identical to ¶¶ 61–62 of Dr. Schneider's Declaration. But Defendant does not rely upon these paragraphs in its Opposition to Plaintiffs' Motion for Class Certification. And as discussed above, Defendant does not rely upon Dr. Funk. Accordingly, the opinions are not duplicative or cumulative for purposes of class certification.

### Issue 11: Minimum-Maximum Principle Strain Thresholds to Affect NDDC Risk (Olanow, Randolph, Schneider)

Plaintiff argues that ¶¶ 74–82 of Dr. Olanow's Declaration, ¶¶ 25(d)(v)–25(d)(vii) of Dr. Randolph's Declaration, and ¶¶ 61–62 of Dr. Schneider's Declaration offer cumulative or duplicative opinions addressing Dr. Hoshizaki's opinions on this issue.

As discussed above, Defendant does not rely upon Dr. Schneider at ¶¶ 61–62. As to Dr. Randolph, Defendant also does not rely upon ¶¶ 25(d)(v)–25(d)(vii). Defendant cites only to ¶ 25(d)(ii) for the proposition that "DTI is an experimental methodology, and not used clinically or diagnostically for any purpose." (Def.'s. Mem. 11, 59 n.41.) This is not sufficiently duplicative or cumulative of Dr. Olanow's opinions at ¶¶ 74–82, which directly address Hoshizaki's opinions.

### Issue 12: Unrelated Factors that Result in NDDCs (Hazrati, Finkel, Iverson, Schneider, Yaffe)

Plaintiffs claim that five experts—Drs. Hazrati, Finkel, Iverson, Schneider, and

Yaffe—offer duplicative or cumulative opinions on Issue 12. Specifically, Plaintiffs note overlap among Hazrati's sections titled "There are Many Potential Causes of Tauopathies in the Brains of Athletes," ¶¶ 76–91, and "Alternative Causes of CTE Tauopathy," ¶¶ 92–102; Finkel, ¶¶ 15–18; Iverson at Section V.F., titled "The Proposed Symptoms of CTE are 'Nonspecific,' Which is a Critical Scientific Problem," ¶¶ 112–24; Schneider at section titled "Difficulties in Differentiating CTE from Other Diseases And In Isolating Head Trauma As the Cause of Disease," ¶¶ 51–55; and Dr. Yaffe at Section E, titled "Head Trauma And Other Potential Risk Factors For Neurodegenerative Disease," ¶¶ 36–41, and Section F, titled "Various Risk Factors Are Associated With Different Neurodegenerative Disease," ¶¶ 42–61.

From the sections above, Defendant cites only to Hazrati ¶ 91 (Def.'s Mem. 62), Finkel ¶¶ 15, 17, 18 (Def.'s Mem. 17–18, 71), and Yaffe ¶¶ 39, 42–61 (Def.'s Mem. 16–17). While these experts may discuss similar issues, the opinions relied upon do not appear to be duplicative.

### Issue 13: The Benefits and Drawbacks of Medical Monitoring (Finkel, Olanow, Randolph, Cassidy)

Plaintiffs claim that ¶¶ 23–60 of Dr. Finkel's Declaration duplicate Section III of Dr. Olanow's Declaration (¶¶ 83–99), ¶¶ 26–27 of Dr. Randolph's Declaration, and Section XI (¶¶ 133–137) of Dr. Cassidy's Declaration. Of those sections, Defendant only relies upon Finkel ¶¶ 24–28, 57 (Def.'s Mem. 93–94.); Olanow ¶¶ 92, 94–96, 99 (Def.'s Mem. 30, 64, 89, 94 n. 60, 94.); Randolph ¶ 27 (Def.'s Mem. 95); and Cassidy ¶¶ 119–20 (Def.'s Mem. 95). While these experts may discuss similar issues, the opinions relied

upon do not appear to be duplicative.

     **E.    There is Insufficient Duplication or Overlap to Warrant the Exclusion of Expert Declarations Relied Upon by Defendant for Purposes of Class Certification**

The Court appreciates Plaintiffs' concerns about the number of experts disclosed by Defendant in its Opposition to Plaintiffs' Motion for Class Certification. But after careful review of the parties' submissions, including the expert citations relied upon in Defendant's Opposition to Class Certification, the Court concludes that Defendant does not impermissibly rely upon cumulative or duplicative expert opinions for purposes of class certification. Any overlap or duplication is insufficient to justify exclusion of all or portions of the expert declarations.[9] The burden to Plaintiff in determining what it may choose to rebut to support its reply in support of its Motion for Class Certification is

---

[9]     To the extent there is some overlap in expert opinions relied upon for class certification, several of Defendant's experts have varying backgrounds and may offer unique perspectives. Dr. Castellani, for example, is a Neuropathologist and Founding Director of the Western Michigan University Center for Neuropathology, Professor of Pathology at Western Michigan University, Director of the Research Histology Lab, and Founding Director of the Center for Neuropathology. Dr. Iverson has a Ph.D. in Clinical Psychology, with a specialization in Neuropsychology and is a Professor in the Department of Medicine and Rehabilitation at Harvard Medical School. He is also Director at Mass General Hospital for the Children Sports Concussion Program and an Associate Director of the TBI Program for Home Base, a Red Sox Foundation. Dr. Yaffe is an M.D. and Professor in the Department of Psychiatry, Neurology and Epidemiology at the University of California, San Francisco. Having multiple experts address similar topics and subject matter does not render their opinions cumulative because they approach the issue from their own unique areas of expertise. See, e.g., Bowman v. Corr. Corp. of Am., 650 F.3d 537, 547 (6th Cir. 2003) (rejecting argument that "defendants were improperly allowed to call four medical experts" because the witnesses "possessed expertise in the distinct areas of hematology, pulmonary medicine and critical care, infectious disease, and pathology").

tempered in two ways.  First, Plaintiff is not required to rebut all of the opinions set forth in the expert declarations filed by Defendant for purposes of its class certification reply. The Amended Scheduling Order provides that Plaintiffs may choose to file "true 'rebuttal' expert reports" if they conclude they are necessary.  Second, rebutting the limited duplicative or overlapping points relied upon is not overly burdensome because the rebuttal point can be made once.

## III.    Conclusion

Defendant did not identify or rely upon Drs. Norman, Funk, or Mr. Neale. Plaintiffs' Motion to Exclude Declarations of Defendant's Experts for Purposes of Plaintiffs' Motion for Class Certification is granted only to the extent that it is not necessary for Plaintiffs to rebut Drs. Norman, Funk, or Mr. Neale for purposes of class certification.  In all other respects, Plaintiffs' motion is denied.[10]

## ORDER

## THEREFORE, IT IS HEREBY ORDERED THAT:

Plaintiffs' Motion to Exclude Declarations of Defendant's Experts for Purposes of Plaintiffs' Motion for Class Certification (Doc. No. 872) is **GRANTED in part** and **DENIED in part**, as set forth herein.

---

[10]    Plaintiffs' Reply brief in support of its Motion for Class Certification is due on October 6, 2017, pursuant to Amended Pretrial Order No. 28.  (Doc. No. 882.)  Amended Pretrial Order No. 22 governing deadlines related to class certification provides, "[i]f Plaintiffs conclude that rebuttal expert reports are necessary (not 'new' expert reports but true 'rebuttal' expert reports) and choose to file them with their reply brief, the NHL may seek leave of the Court to file a sur-reply and/or take additional deposition testimony. At that time, the Court will consider the nature of the rebuttal expert testimony and whether further discovery and briefing is warranted."  (Doc. No. 605, ¶ 6.)

Dated:  July 25, 2017                    s/Susan Richard Nelson
                                         SUSAN RICHARD NELSON
                                         United States District Judge