UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In Re: National Hockey League          MDL No. 14-2551 (SRN/BRT)
Players' Concussion Injury
Litigation

                                                   MEMORANDUM OPINION
This Document Relates to All Actions           AND ORDER

---

Charles S. Zimmerman, Brian Gudmundson, David Cialkowski, and Wm Dane DeKrey, Zimmerman Reed, PLLP, 1100 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402; Bradley C. Buhrow and Hart L. Robinovitch, Zimmerman Reed, PLLP, 14646 North Kierland Boulevard, Suite 145, Scottsdale, Arizona 85254, for Plaintiffs

Stephen G. Grygiel, Steven D. Silverman, and William Sinclair, Silverman, Thompson, Slutkin & White, LLC, 201 North Charles Street, Suite 2600, Baltimore, Maryland 21201, for Plaintiffs

Jeffrey D. Bores, Bryan L. Bleichner, and Christopher P. Renz, Chestnut Cambronne PA, 17 Washington Avenue North, Suite 300, Minneapolis, Minnesota 55401, for Plaintiffs

Janine D. Arno, Kathleen L. Douglas, Stuart A. Davidson, and Mark J. Dearman, Robbins, Geller, Rudman & Dowd, LLP, 120 East Palmetto Park Road, Boca Raton, Florida 33432, and Leonard B. Simon, Robbins, Geller, Rudman & Dowd, LLP, 655 West Broadway, Suite 1900, San Diego, California 92101, for Plaintiffs

Lewis A. Remele, Jr., Jeffrey D. Klobucar, and J. Scott Andresen, Bassford Remele, 33 South Sixth Street, Minneapolis, Minnesota 55402, for Plaintiffs

Thomas Demetrio, William T. Gibbs, and Katelyn I. Geoffrion, Corboy & Demetrio, 33 North Dearborn Street, Chicago, Illinois 60602, for Plaintiffs

Brian D. Penny, Goldman, Scarlato & Karon PC, 101 East Lancaster Avenue, Suite 204, Wayne, Pennsylvania 19087, and Mark S. Goldman, Goldman, Scarlato & Karon, PC, 101 West Elm Street, Suite 360, Conshohocken, Pennsylvania 19428, for Plaintiffs

Vincent J. Esades and James W. Anderson, Heins Mills & Olson, PLC, 310 Clifton

Avenue, Minneapolis, Minnesota 55403, for Plaintiffs

David I. Levine, The Levine Law Firm P.C., 1804 Intracoastal Drive, Fort Lauderdale, Florida 33305, for Plaintiffs

Daniel E. Gustafson, David A. Goodwin, and Joshua J. Rissman, Gustafson Gluek, PLLC, 120 South Sixth Street, Suite 2600, Minneapolis, Minnesota 55402, for Plaintiffs

Thomas J. Byrne, Namanny, Byrne, & Owens, APC, 2 South Pointe Drive, Lake Forest, California 92630, for Plaintiffs

Michael R. Cashman and Richard M. Hagstrom, Hellmuth & Johnson, PLLC, 8050 West 78th Street, Edina, Minnesota 55439, for Plaintiffs

Robert K. Shelquist, Lockridge, Grindal, Nauen, PLLP, 100 Washington Avenue South, Suite 2200, Minneapolis, Minnesota 55401, for Plaintiffs

Shawn M. Raiter, Larson King, LLP, 30 East Seventh Street, Suite 2800, St. Paul, Minnesota 55101, for Plaintiffs

Charles J. LaDuca, Cuneo, Gilbert & LaDuca, LLP, 8120 Woodmont Avenue, Suite 810, Bethesda, Maryland 20814, for Plaintiffs

Daniel J. Connolly, Joseph M. Price, Linda S. Svitak, and Aaron D. Van Oort, Faegre Baker Daniels, LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402; John H. Beisner, Jessica D. Miller, and Geoffrey M. Wyatt, Skadden, Arps, Slate, Meagher & Flom LLP, 1440 New York Avenue, Northwest, Washington, D.C. 20005-2111; Shepard Goldfein, James A. Keyte, Matthew M. Martino, and Michael H. Menitove, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036; Matthew Stein, Skadden, Arps, Slate, Meagher & Flom, LLP, 500 Boylston Street, Boston, Massachusetts 02116; Joseph Baumgarten and Adam M. Lupion, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, for Defendant

Lawrence S. Elswit, Boston University, Office of the General Counsel, 125 Bay State Road, Boston, Massachusetts 02215, for Non-Party Trustees of Boston University/CTE Center

_____

SUSAN RICHARD NELSON, United States District Court Judge

This matter is before the Court on the Motion for Attorneys' Fees and Expenses [Doc. No. 845] filed by non-party Boston University ("BU") on behalf of the BU Center for the Study of Traumatic Encephalopathy (hereinafter, "BU CTE Center"). For the reasons set forth herein, BU's motion is granted in part and denied in part.

## I. BACKGROUND

In January 2017, the National Hockey League ("NHL") moved to compel responses to a subpoena duces tecum that it had served on the BU CTE Center.[1] The Center maintains a brain bank of approximately 400 donated human brains and spinal cord tissue, studied by its researchers to understand the impact of trauma on the human nervous system. (Order of 4/26/17 at 3-4 [Doc. No. 731]) (citing McKee Aff. ¶¶ 5, 19 [Doc. No. 682]). Of these 400 donated brains, six are from former NHL hockey players. (Id. at 30 n.9) (citing BU's Letter of April 26, 2017 at 1 [Doc. No. 730].) Among the contested types of discovery subpoenaed by the NHL were medical records, autopsy reports, slides, photographs, neuropathology reports, related clinical findings, and interview notes related to Lawrence Zeidel, a deceased NHL player whose estate had recently joined this multidistrict action. (See id. at 7-8) (citing Oct. 2016 Subpoena [Doc. No. 670-1]). The NHL also requested the same information as to "other hockey players" and "other

---

[1] BU produced approximately 70 documents in response to the subpoena, in addition to documents that it had previously produced in response to an earlier NHL subpoena. (D. Connolly Decl. ¶ 10 [Doc. No. 870]

athletes" who had donated their brains to the Center's brain bank.  (Id.)  In addition, the NHL requested the Center's underlying documents related to publications concerning CTE, including abstracts, presentations, draft publications, communications among the CTE Center's representatives, reviewer comments or questions, and responses to reviewer comments or questions.   (Id.)

The NHL argued that it required this information so that its expert, Dr. Rudy Castellani, could verify the accuracy of the CTE Center's reports and conduct an independent analysis of the cases reported by researchers at the CTE Center.  (Id. at 13) (citing Castellani Decl. ¶¶ 10, 13 [Doc. No. 671].)   In opposition to the NHL's motion to compel, the CTE Center's researchers raised concerns about the undue burden of complying with the subpoena, asserting that doing so would consume hours, if not years, of work, in addition to confidentiality concerns regarding the disclosure of medical information.[2]  (Id. at 8-11) (citing McKee Aff. ¶¶ 19, 20, 23).  Moreover, they maintained that, ultimately, the resulting production would be of little value after the removal of personal identifiers.  (Id. at 9) (citing McKee Aff. ¶ 23).  And, given the broad scope of the NHL's requests, the CTE Center asserted that its efforts to produce the requested information would negatively affect its ability to conduct ongoing CTE research.

---

[2]   The CTE Center estimated that locating and preparing 400,000 photographs and digital photographs, gathering them into secure boxes or copying them onto CDs would take approximately four hours for each of the 400 brain donors.  (Order of 4/26/17 at 27) (citing McKee Aff. ¶¶ 19-20, 23).   The CTE Center further estimated that packaging and locating the Center's approximately 264,000 glass microscopy slides and 40,000 large landscape slides would take a minimum of 400 hours.  (Id.)

4

(Id.) (citing Stern Aff. ¶ 1 [Doc. No. 683].)

In the Order of April 26, 2017 ("the April 26 Order"), this Court weighed the NHL's asserted need for the subpoenaed information against non-party BU's burden of production. The Court found the scope of the subpoena, encompassing the donated brains of all athletes, without limitation to hockey players, much less NHL hockey players, to be extraordinarily broad. (Id. at 27). The Court disagreed with the NHL's asserted need for much of the data, finding that raw data, not in the public domain, was irrelevant to the NHL's knowledge of causal links between head injuries and CTE. (Id.) Rejecting the League's argument that the information was necessary to challenge the opinion of Plaintiffs' expert, the Court noted that, to the extent there are differences of opinion, Defendant will be able to draw comparisons and attempt to impeach the expert's opinion at trial, without the need for much of the subpoenaed discovery. (Id. at 19.) For example, the Court observed that Defendant's expert, Dr. Castellani, had formulated his critique based on information in the published literature and accompanying images, without the need for voluminous underlying data. (Id. at 21.) And, notably, Dr. Castellani failed to identify any basis upon which to fundamentally question the integrity of BU's methodology. (Id.) Finding that the extraordinary burden of production outweighed the NHL's asserted need, this Court "denie[d] Defendant's Motion to Compel in part as to most of the requested information." (Id. at 19, 27) (emphasis added).

However, the Court found that a limited subset of the information should be produced. In light of the representation of BU's counsel that it would produce the

requested digitized slides and photographs for Mr. Zeidel, the Court directed BU to provide the corresponding material from other NHL players for whom authorizations were obtained. (Id. at 28-29.) In addition, the Court directed BU to produce any public statements that it had issued to the press, or that the BU CTE Center had made regarding its research on NHL donors. (Id. at 29.) For those limited areas of permitted discovery, the Court required the NHL to reimburse BU for its reasonable expenses of production. (Id. at 30.)

BU now moves, pursuant to Fed. R. Civ. P. 37(a)(5)(C), for attorneys' fees and costs incurred in opposing the NHL's motion to compel compliance with the subpoena. It argues that the NHL's position in moving to compel the subpoenaed material was not "substantially justified," as contemplated by Fed. R. Civ. P. 37(a)(B), (BU's Mem. Supp. Mot. for Fees at 6-9 [Doc. No. 846]), and that partial success is not a bar to recovery of a fee award. (BU's Reply Mem. at 9-13 [Doc. No. 878].) Applying the lodestar methodology, BU asserts that its attorneys' fees were reasonable within the relevant legal community of Boston, as were its expenses. (BU's Mem. at 11-12.) It requests attorneys' fees and costs in the amount of $119,713.84.[3] (Id. at 14.)

---

[3] The requested award consists of the following:

Attorney Lawrence Elswit: $600/hour x 135 hours = $81,000
Attorney Kristin Bittinger: $350/hour x 40 hours = $14,000
Attorney Benjamin Green: $200/hour x 110 hours = $22,000
Costs and expenses: $2,713.84

Although BU seeks an award of $119,703.84, (BU's Mem. at 14), the total amount is actually $10.00 higher: $119,713.84. The Court therefore considers an award of the

The NHL opposes BU's motion, arguing that BU is not entitled to attorneys' fees and costs, as the NHL's motion to compel was substantially justified. (NHL's Opp'n Mem. at 11-12 [Doc. No. 869].) It further contends that BU has not shown that the expenses incurred were attributable to the portions of the NHL's motion that were denied (Id. at 17.)

## II. DISCUSSION

### A. Rule 37

Pursuant to Federal Rule of Civil Procedure 37(a), if a motion to compel discovery is denied, the court "must" require the moving party to pay the opposing party's reasonable expenses, including attorney's fees, incurred in opposing the motion, unless the motion was "substantially justified," or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). In the situation in which "the motion is granted in part and denied in part, the court may. . . apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). The Court therefore examines whether the NHL was substantially justified in bringing the motion to compel. This requires a determination as to whether the NHL's "position was justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person. To warrant such a characterization, the position must have reasonable basis both in law and fact." Conklin v.

---

actual amount of fees and costs.

Astrue, 282 Fed. App'x 488 (8th Cir. 2008) (internal citations and quotations omitted).

As set forth throughout the April 26 Order, much of the discovery that Defendant moved to compel did not have a reasonable basis in fact. Instead, it was irrelevant. (See, e.g., Order of 4/26/17 at 18-20.) Many of the subpoena requests were not reasonably limited to NHL players, or even to hockey players in general, but extended to all athletes. Moreover, as noted in the April 26 Order, the NHL's asserted basis for seeking much of the information–to challenge the opinions of Plaintiffs' expert–was also largely unreasonable. (Id.) As the Court observed, the NHL's own experts will presumably offer contradictory opinions, and the NHL is free to use such opinions, along with any contradictory facts, to attempt to impeach Plaintiffs' experts and challenge their evidence. (Id. at 19.)

The NHL also urges the Court to consider counsels' efforts to resolve the discovery dispute without motion practice, in determining whether its motion was substantially justified. (Def.'s Opp'n Mem. at 4-6.) While the Court appreciates the efforts of the NHL and BU to try to resolve their dispute, as reflected in the Declaration of Daniel J. Connolly, and supporting exhibits attached thereto, prior to the filing of the motion to compel, these efforts did not substantially justify the filing of the motion. The discussions between counsel appear to have primarily involved BU's concerns about the confidentiality of medical information and the cost of collection. (See D. Connolly Decl. ¶ 9, Ex. 12.) Additionally, while the NHL asserts that counsel for BU never responded to the League's request to identify "manageable" subpoenaed requests for which it might

8

have been able to produce responsive discovery, (id., Ex. 13), the NHL does not appear to have narrowed the broad scope of its requests. It also appears that the NHL filed its Motion to Compel within eight days of being served with BU's responses and objections to the subpoena. (See D. Connolly Decl., Ex. 14.)

In addition to its factual arguments, the NHL asserts that its motion was substantially justified as a matter of law. The League primarily relies on authority from the United States District Court for the District of Columbia for the proposition that where there is no controlling precedent on a legal issue, and "the issue presented is not free from doubt and could engender a responsible difference of opinion among conscientious, diligent but reasonable advocates," then the non-prevailing position is substantially justified. (Def.'s Opp'n Mem. at 2, 14-16) (citing Peterson v. Hantman, 227 F.R.D. 13, 18 (D.D.C. 2005); Cobell v. Norton, 226 F.R.D. 67 (D.D.C. 2005)). Pointing to the Court's analysis of the case law in the April 26 Order, the NHL argues that it properly addressed the relevant law in its submissions to the Court. (Id. at 15-16.) The League asserts that because of a lack of controlling precedent, the outcome of the motion to compel turned on "complicated distinctions" in the law and facts. (Id.) (citing Cobell, 226 F.R.D. at 91). All of this, the NHL argues, substantially justifies the filing of the motion to compel.

The Court disagrees. As an initial matter, the District of Columbia decisions cited by the NHL are not controlling authority here. Under Eighth Circuit authority, the inquiry as to whether a party's position was "substantially justified" focuses on whether the non-prevailing position was reasonably based in law and fact. See, e.g., Bah v. Cangemi, 548

9

F.3d 680, 683-84 (8th Cir. 2008). In addition, this case is entirely different from Cobell, the case on which the NHL primarily relies. In Cobell, after the court granted in part and denied in part the plaintiffs' motion to compel certain discovery, the plaintiffs moved for their reasonable expenses incurred in making the motion. 226 F.R.D. at 90. The court rejected any such award. Id. Because it had "denie[d] the majority of the plaintiffs' requests for compelled disclosure," the court found "the defendants' objections to those requests [were] by definition substantially justified." Id. In contrast, here, the entity seeking a fee award, BU, is the entity which primarily prevailed. Applying the reasoning of Cobell to these facts actually lends support to BU's position, e.g., because the Court denied the majority of Defendant's requests for compelled disclosure, the requests were not substantially justified.

The NHL asserts that the Court's analysis of the case law in the April 26 Order demonstrates that the NHL properly addressed the relevant law on a complicated matter, showing that reasonable minds could differ. But the mere fact of the Court's analysis of case law does not demonstrate an absence of authority or even indicate a close question. As this Court found in the April 26 Order, the NHL failed to reasonably demonstrate that its asserted need for the vast majority of the material, much of which was not relevant, outweighed the tremendous burden of production on non-party BU. (Order of 4/26/17 at 28.) It was not reasonable, in the context of this case, for the NHL to subpoena the CTE Center for primary research data regarding its 400 subject donors, when only six of them had been NHL players, absent some credible argument that the CTE Center's data was

10

relevant and inaccurate. But lacking any supportable basis to broadly question the integrity of the CTE Center's work, and nevertheless proceeding with such broad discovery, amounted to "a fishing expedition." (2/24/17 H'rg Tr. at 46-47 [Doc. No. 712].)

Defendant also emphasizes that its position was substantially justified based on past non-party discovery permitted of the NHL Clubs and Chubb Insurance. (Def.'s Opp'n Mem. at 16-17.) But, as stated in the April 26 Order, the underlying data that the NHL requested from BU was not similarly relevant here. (Order at 18-19.) Nor does the Court find that "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). For all of the foregoing reasons, the Court finds that it has the discretion to award fees to BU for the portions of the motion on which it prevailed, assuming that it has provided sufficient evidence of reasonable attorneys' fees and costs.

### B. Attorneys' Fees

The starting point for the determination of the amount of a reasonable attorney's fee involves calculating the "lodestar," which provides an initial estimate of the value of the attorney's service. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate. Id. The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of comparable skills, experience and reputation. See Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Typically, this is the ordinary rate for similar work in the community in which the case is

litigated. Emery v. Hunt, 272 F.3d 1042, 1048 (8th Cir. 2001). In determining the reasonable hourly rate, "district courts may rely on their own experience and knowledge of prevailing market rates." Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005). The party seeking a fee award is responsible for providing evidence of hours worked and the rate claimed. Wheeler v. Mo. Highway & Transp. Comm'n, 348 F.3d 744, 754 (8th Cir. 2003).

In instances in which the party seeking fees does not keep contemporaneous time records, the failure to do so "does not necessarily preclude recovery of attorney fees, and reconstructed records can support a fee application where they satisfactorily document the time expended." Starr v. Metro Sys., Inc., 01-CV-1122 (JNE/SRN), 2006 WL 3370811, at *2 (D. Minn. Nov. 21, 2006) (citing MacDissi v. Valmont Indus., Inc., 856 F.2d 1054, 1061 (8th Cir. 1988)). Counsel for BU, who are lawyers in the University's Office of the General Counsel, attest that it is not their practice to keep time records because they do not bill their client. (Elswit Aff. ¶ 8 [Doc. No. 847]; Bittinger Aff. ¶ 5 [Doc. No. 848]; Green Aff. ¶ 4 [Doc. No. 849].) However, by reconstructing their calendars during the relevant time periods, and accounting for other commitments, they believe that they have submitted a reasonably accurate accounting of their time spent, from approximately January 2017 to April 2017, opposing the NHL's motion to compel. (Id.) In lieu of billing records, the Court accepts their reconstructed billing estimates, supported by the attorneys' affidavits.

Counsel for BU seeks an award of $117,000 in attorneys' fees.[4] (See BU's Mem. at 14.) The affidavits submitted by counsel for BU also detail the attorneys' education, experience, and, in the case of Mr. Elswit, his estimated hourly rate.[5] (Elswit Aff. ¶¶ 2-4; 7-19; Bittinger Aff. ¶¶ 2; Greene Aff. ¶¶ 1-2.) In addition, BU's counsel submitted supporting affidavits from colleagues in Boston indicating comparable rates for work done by attorneys with experience levels similar to those of BU's counsel, and attesting to the reasonableness of these rates for the work performed in this action. (Geetter Aff. ¶ 6 [Doc. No. 850]; Lapp Aff. ¶¶ 3-5 [Doc. No. 851]; S. Connolly Aff. ¶ 8 [Doc. No. 852]; Gardener Aff. ¶¶ 4-5 [Doc. No. 853].) As noted, while courts typically determine a reasonable hourly rate based on the usual rates for similar work in the community in which the case is being litigated, Emery, 272 F.3d at 1048, out-of-state rates may be considered in certain circumstances. Id. (citing Avalon Cinema Corp. v. Thompson, 689 F.2d 127, 140 (8 Cir. 1982) (en banc)). In this case, the underlying motion or a motion to quash could have been brought in Boston, but BU agreed to this Court's jurisdiction for purposes of this motion. In addition, BU"s use of its "in-house" General Counsel was likely cost-efficient, given the familiarity of counsel with the CTE Center. Furthermore, based on the Court's knowledge of prevailing rates in the local Minnesota legal community, the requested hourly rates are quite similar, for similar work.

---

[4] The $117,000 total fee amount consists of the fees of Attorneys Elswit ($81,000), Bittinger ($14,000), and Greene ($22,000). (BU's Mem. at 14.)

[5] The attorneys' hourly rates are indicated in footnote 3, *supra*.

Defendant does not appear to challenge the reasonableness of the hourly rates of BU's counsel, and instead argues against an award of attorneys' fees overall, as is discussed above. Given the training, experience and skill level of BU's counsel, the Court finds that the hourly rates charged by the attorneys are reasonable and consistent with the prevailing market rates for legal professionals of comparable skill levels in Boston.

As to the reasonableness of the hours expended, the Court must determine an appropriate amount of reasonable attorneys' fees, in light of the extent of BU's success on its prevailing arguments. See Burks v. Siemens Energy & Automation, Inc., 215 F.3d 880, 882 (8th Cir. 2000). The court may reduce the award, considering "whether the expenditure of counsel's time was reasonable in relation to the success achieved," Simpson v. Merchants & Planters Bank, 441 F.3d 572, 580th (8th Cir. 2006) (citation omitted), although no precise rule or formula applies to the determination of reasonableness of the time expended. Arneson v. Callahan, 128 F. 3d 1243, 1249 (8th Cir. 1997) (citation omitted).

In support of its request for attorneys' fees, BU asserts that prior to the issuance of the April 26 Order, it had agreed to produce the material that the Court eventually ordered it to produce. (See Elswit Aff. ¶ 15.) However, the NHL contends that BU did so only because of, and after, the Court's informal direction at the hearing on the motion. (Def.'s Opp'n Mem. at 14.) Thus, the NHL asserts, its motion was necessary to obtain the materials that were ultimately produced. (Id.) In addition, the NHL argues that BU "has

14

made no showing that the expenses it incurred are uniquely attributable to defending against the unsuccessful portion of the motion." (Id. at 17.)

Mr. Elswit, counsel for BU, delineates how he and his two colleagues worked in response to the League's motion to compel. (Elswit Aff. ¶¶ 9-15.) He characterizes his time estimate as conservative, indicating that it does not include recovery for travel time to and from St. Paul, Minnesota, (id. ¶ 12), or for time spent meeting and conferring with counsel for the NHL, and then following up with the CTE Center. (Id. ¶ 14.) BU prevailed on the majority of its arguments in response to the NHL's Motion to Compel. However, it is true that some areas of discovery were permitted, and that BU produced certain materials primarily in response to the Court's guidance at the motion hearing. In In re Morreale Hotels LLC, 517 B.R. 184, 203 (Bankr. C. D. Cal. 2014), the court applied Rule 37(a)(5)(B) and (C), apportioning the reasonable expenses incurred by the prevailing party in responding to the bankruptcy debtors' motion to compel. The court awarded partial fees, finding that the debtors' actions to enforce its subpoenas "were for the most part not substantially justified, though not entirely so." Id. The court observed that "most, but not all, of the categories of documents requested in the document subpoenas remaining in dispute between the parties sought irrelevant information and were not substantially justified." Id. However, for a variety of reasons, including that some of the unsettled requests for information "did not seek completely irrelevant information," the court reduced the requested fee award from $49,495 to $25,000. The Court finds this approach persuasive, given that Defendant's Motion to Compel was largely denied, although a

15

portion of the motion that pertained to relevant evidence was granted. In light of all of the foregoing, the Court finds that a reduction of 20%, or $23,400, is appropriate here. Accordingly, the Court adjusts BU's attorneys' fees from its requested amount of $117,000 to an award of $93,600.

    **C.**     **Costs**

Counsel for BU also seeks $2,713.84 in costs. (BU's Mem. at 14.) These costs consist of $866.50 for mailing fees and $1,847.34 in travel expenses related to the hearing on Defendant's Motion to Compel. These costs are reasonable and shall be reimbursed in full.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion for Attorneys' Fees and Expenses filed by Boston University CTE Center [Doc. No. 845] is **GRANTED in part** and **DENIED in part**; and

2. The Court awards Boston University attorneys' fees in the amount of $93,600, and costs in the amount $2,713.84, for a total award of $96,313.84.

Dated: July 31, 2017

                                                    s/Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Court Judge