# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: NATIONAL HOCKEY LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION,<br><br>*This document relates to:*<br><br>*Veitch v. NHL, et al.*, Case No. 16-cv-02683 (SRN/JSM) | MDL No. 14-2551 (SRN/BRT)<br><br>**MEMORANDUM OPINION AND ORDER** |

Brian Gudmundson and David Cialkowski, Zimmerman Reed, LLP, 1100 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402, for Plaintiffs;

Richard R Gordon, Gordon Law Offices, Ltd., 211 W. Wacker Dr., Suite 500, Chicago, Illinois 60606, for Plaintiffs;

Stephen G. Grygiel, Steven D. Silverman, and William Sinclair, Silverman, Thompson, Slutkin & White, LLC, 201 North Charles Street, Suite 2600, Baltimore, Maryland 21201, for Plaintiffs;

Stuart A. Davidson, Robbins, Geller, Rudman & Dowd, LLP, 120 East Palmetto Park Road, Boca Raton, Florida 33432, and Leonard B. Simon, Robbins, Geller, Rudman & Dowd, LLP, 655 West Broadway, Suite 1900, San Diego, California 92101, for Plaintiffs;

Thomas Demetrio and William T. Gibbs, Corboy & Demetrio, P.C., 33 North Dearborn Street, Chicago, Illinois 60602, for Plaintiffs;

Robert K. Shelquist, and Rebecca A. Peterson, Lockridge, Grindal, Nauen, PLLP, 100 Washington Avenue South, Suite 2200, Minneapolis, Minnesota 55401, for Plaintiffs;

Daniel J. Connolly, Joseph M. Price, Linda S. Svitak, and Aaron D. Van Oort, Faegre Baker Daniels, LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402; John H. Beisner, and Jessica D. Miller, Skadden, Arps, Slate, Meagher & Flom LLP, 1440 New York Avenue, Northwest, Washington, D.C. 20005-2111; Shepard Goldfein, and Matthew M. Martino, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036; Joseph Baumgarten and Adam M. Lupion, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

I. INTRODUCTION

This matter comes before the Court on Defendant National Hockey League's (the "NHL")[1] motion to dismiss plaintiff Andre Deveaux's claims in the Complaint for lack of personal jurisdiction. [Doc. No. 21.] *See* Fed. R. Civ. P. 12(b)(2). In the alternative, the NHL urges the Court to transfer this action to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a). (*Id.*)

For the reasons set forth below, the Court grants Defendant's motion and dismisses Deveaux's claims without prejudice.

II. FACTUAL AND PROCEDURAL BACKGROUND

The general facts pertaining to the underlying MDL are set forth in previous rulings from this Court, and are incorporated here by reference. *See NHL Players' Concussion Injury Litig.*, No. 14-MDL-2551 [Doc. No. 126], 2015 WL 1334027 (D. Minn. March 25, 2015); *NHL Players' Concussion Injury Litig.*, No. 14-MDL-2551, 327 F.R.D. 245 (D. Minn. 2018). This substantially similar action, also brought on behalf of former NHL players, was directly filed in this district. The allegations here essentially mimic the complaint in the MDL. *See NHL Players' Concussion Injury Litig.*, No. 14-MDL-2551 [Doc. No. 615]. Stated briefly, this case arises from repetitive head trauma–including

---

[1] For this motion, the NHL also refers to the National Hockey League Board of Governors because both NHL Parties are treated similarly in the Complaint for purposes of alleging personal jurisdiction. (Am. Compl. ¶¶ 1, 4,117-118, 120.)

concussive and sub-concussive head injuries–sustained by former NHL players during their professional careers. (Am. Class Action Compl. [Doc No. 8] ("Am. Compl.") ¶¶ 9, 579.) The NHL, according to Plaintiffs, knew or should have known, that by "permitting and promoting fighting" in the sport, players would suffer brain trauma with debilitating long-term effects. (*Id*. ¶¶ 9, 121-147.) The effects suffered from this NHL-sanctioned fighting include "memory loss, dementia, depression, [Chronic Traumatic Encephalopathy] 'CTE', and related symptoms, including addiction." (*Id*. ¶ 129.) Moreover, Plaintiffs allege that the NHL concealed studies linking repetitive concussive events to neurodegenerative conditions. (*Id*. ¶¶ 7, 593.)

Based on these allegations, each plaintiff appears to assert two negligence-based causes of action and one fraud-based cause of action against the NHL. (*See, e.g.*, *id*. ¶¶ 569-596, Counts XXXXVII-XXXXIX.) Although the negligence claims overlap, the thrust of the allegations are that the NHL was negligent in disregarding its duty to (i) keep NHL players safe; and (ii) advise NHL players of all risks, including the risk of brain damage. (*Id*. ¶¶ 574, 586.) By failing to do so, NHL players suffered injuries, including "long-term, degenerative brain damage" and "other neurological deficits." (*Id*. ¶¶ 574, 587.) In the fraud claim, Plaintiffs allege that the NHL was in a position of "superior knowledge" about the long-term effects of head hits. (*Id*. ¶ 589.) The NHL concealed these risks. (*Id*. ¶ 593.) In reasonably relying on the NHL's silence about returning to games "too soon after sustaining a traumatic brain injury" and even outright denials of "any later-in-life risks," NHL players suffered significant brain damage, neurocognitive, and neurological deficits. (*Id*. ¶¶ 593, 595.)

Deveaux, a Canadian citizen, is the only remaining plaintiff in this action. (*Id*. ¶¶ 89, 569-596, Counts XXXXVII-XXXXIX.) To support the allegations above, he asserts that he suffered multiple serious head traumas that were improperly diagnosed and treated during his NHL career. (*Id*. ¶ 92.) Deveaux's NHL career spanned a "total of 31 games" and involved 15 hockey fights. (*Id*. ¶¶ 90-91.) The Complaint is silent about the location of these hockey games or fights.

In this motion, the NHL challenges this Court's personal jurisdiction and venue over Deveaux and his claims. (*See* Def.'s Mem. Of Law in Supp. Of Mot. To Dismiss Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(2) [Doc. No. 21] ("Def.'s Mem. Dismiss").) The NHL—organized as an unincorporated association (Am. Compl. ¶ 2)—argues that it is not subject to general jurisdiction in Minnesota because its headquarters and principal place of business is in New York. (Def.'s Mem. Dismiss at 1, 5-7.) As to specific jurisdiction, the NHL argues that Deveaux does not allege any connection between his claims and the NHL's contacts with Minnesota. (*Id*. at 7-9.) In support of the NHL's motion, the NHL filed an affidavit attaching a Fact Sheet submitted by Deveaux (the "Fact Sheet"). (*See* Decl. of Daniel J. Connolly ("Connolly Decl."), Ex. 1 [Doc. No. 24].) Deveaux's Fact Sheet states that his current residence is in Canada. (*Id*. at 2.) The Fact Sheet also identifies three NHL hockey teams that Deveaux played on during his career, and about 120 hockey fights involving Deveaux, spanning from 2000-2013. (*Id*. at 4-12.) Fourteen of these fights were alleged to have occurred while Deveaux was playing in the NHL. (*Id*. at 5-12.) Neither of the NHL teams for which Deveaux played were in Minnesota, nor were any of Deveaux's hockey fights in Minnesota. (*Id*.)

4

Deveaux did not respond to the NHL's motion.

## III. DISCUSSION

### A. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff must make a prima facie showing that the court's exercise of jurisdiction is proper. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). The plaintiff may meet this burden by pleading facts sufficient to "support a reasonable inference that the defendant[] can be subjected to jurisdiction within the [forum] state." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). This inference is subject to testing not solely on the pleadings alone, however, but by any "affidavits and exhibits presented" with the motion. *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012) (citation omitted). When—as is the case here—the Court has not conducted an evidentiary hearing, it must view the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in that party's favor. *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011). Yet "the party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction." *Fastpath*, 760 F.3d at 820.

### B. The Law of Personal Jurisdiction

In order to find that personal jurisdiction over a defendant is proper, a federal court sitting in diversity must first determine that certain state and constitutional prerequisites have been met. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995). Even here, when an action is directly filed into the MDL, both state

5

and constitutional prerequisites must be satisfied. *See, e.g.*, *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, No. CIV.A. H-10-171, 2011 WL 1232352, *5-13 (S.D. Tex. Mar. 31, 2011) (dismissing a case directly filed in the MDL court for lack of personal jurisdiction when defendant did not stipulate to 12(b)(2) defense).[2] First, the court must consider whether the requirements of Minnesota's long-arm statute have been satisfied. Second, the court must ask whether exercising jurisdiction over the defendant would comport with the Due Process Clause of the Fourteenth Amendment. In Minnesota, however, these two inquiries combine into a single due process examination, because the state long-arm statute has been held to be co-extensive with the constitutional bounds of jurisdiction. *See Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir. 1991) (citing *Rostad v. On-Deck, Inc.*, 372 N.W.2d 717, 719 (Minn. 1985)).

The Due Process Clause permits a court to exercise personal jurisdiction over a non-resident defendant when that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). Underlying this standard is the conviction that "those who live or operate

---

[2] As noted above, this action is a directly filed suit rather than one transferred as part of the MDL. *See NHL Players' Concussion Injury Litig.*, No. 14-MDL-2551 [Doc. Nos. 1, 3, 148, 195, 206, 333, 1145]; *but cf. In re FCA US LLC Monostable Elec. Gearshift Litig.,* No. 16-MDL-02744 [Doc. No. 108] (E.D. Mich. April 19, 2017) (analyzing personal jurisdiction in JPML-transferred case by examining defendant's contacts with the transferor forum). Thus, when a defendant does not consent to personal jurisdiction in a directly filed suit, any alleged defects in personal jurisdiction are analyzed by examining defendant's contacts with the MDL forum. *In re Heartland Payment Sys., Inc. Litig.*, 2011 WL 1232352 at *5-13.

primarily outside a State have a . . . right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011); *see also Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779 (2017) (requiring non-resident class members to establish jurisdiction, on a plaintiff-by-plaintiff, claim-by-claim assessment, by demonstrating that the claims involve "an activity or occurrence that takes place in the forum State.") (internal quotation omitted). Thus, the Supreme Court has made clear that there must be some showing that the defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

From these core principles, the Eighth Circuit has distilled a five-factor test to be used in analyzing the propriety of a court's exercise of personal jurisdiction over a non-resident defendant. This test considers: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *See Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (citing *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994)). "The first three factors are closely related and are of primary importance, while the last two factors are secondary." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) (citing *Digi–Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996)).

Moreover, the third factor, the relation of the cause of action to the contacts, serves to distinguish the appropriate theory of jurisdiction: general or specific. "A court with

7

general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol–Myers Squibb*, 137 S. Ct. at 1780 (emphasis in original). Specific personal jurisdiction, on the other hand, "is very different." *Id.* "In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." *Id.* (citations and alterations omitted).

### 1. General Personal Jurisdiction

At the outset, the Court concludes that general or "all-purpose" jurisdiction over the NHL is clearly lacking. As the Eighth Circuit has explained "general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose, while specific jurisdiction requires that the cause of action arise from or relate to a defendant's actions within the forum state." *Wells Dairy, Inc.*, 607 F.3d at 518 (internal quotation and citation omitted). To assert general jurisdiction over a foreign corporation, a court must first determine that the corporation's affiliations with the forum are so "continuous and systematic" as to "render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (internal quotations and alterations omitted).

Two places according to *Daimler* that are "paradigm all-purpose forums" for a corporation are where it is incorporated and where it has its principal place of business. *Id.* at 760. This standard has been applied by other courts to unincorporated associations, like the NHL. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016) ("*Daimler*'s reasoning was based on an analogy to general jurisdiction over individuals,

and there is no reason to invent a different test for general personal jurisdiction depending on whether the defendant is an individual, a corporation, or another entity"); *Dallas Texans Soccer Club v. Major League Soccer Players Union*, 247 F. Supp. 3d 784, 788-89 (E.D. Tex. 2017) (applying the general jurisdiction test in *Daimler* to a player's union similarly organized as an unincorporated association.).[3]

Here, the NHL is not "essentially at home" in Minnesota. The parties agree that the NHL is headquartered in New York, but the Complaint is silent about whether the NHL's principal place of business is in a different State. (*Compare* Def.'s Mem. Dismiss at 6 *with* Am. Compl. ¶ 117.) The NHL alleges, without opposition, that its principal place of business is also in New York. (Def.'s Mem. Dismiss at 6); s*ee also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (finding a corporation's main headquarters usually serves as a corporation's place of business). The Court finds—in the absence of any contrary evidence—that the NHL is a non-resident entity, with its principal place of business in New York. Deveaux appears to agree tacitly with this result, because the Complaint also alleges that the NHL had the necessary "continuous and systematic" contacts required for this Court to exercise jurisdiction over foreign corporations. (Am. Compl. ¶ 120.)

Nonetheless, while the Complaint alleges "continuous and systematic" contacts by the NHL in this forum, Deveaux fails to sufficiently allege any such contacts. For instance,

---

[3] In *Daimler*, the Supreme Court also applied the "essentially at home" standard to an unincorporated entity. The Supreme Court held that MBUSA was not subject to general personal jurisdiction in California because it was neither incorporated in California, nor was its principal place of business there. *Daimler*, 134 S. Ct. at 761-62. MBUSA is not a corporation. It is a Delaware limited liability company. *Id*. at 751-52.

he alleges that the NHL has a franchised club and team in Minnesota, but acknowledges that the NHL has clubs and teams in several other states. (*Id*. ¶¶ 1, 117 (recognizing the NHL "operates out of many different cities and states within the United States").) Thus, taking into account the NHL's "activities nationwide . . . [t]hese contacts are not so continuous and systematic" as to render the NHL essentially at home here. *See, e.g.*, *Dallas Texans Soccer Club*, 247 F. Supp. 3d at 788-89 (finding a player's union representing 588 players from twenty teams nationwide was not "at home" in a forum, despite having 59 members and two representatives from two teams within the forum). As such, the Court may not exercise general jurisdiction over the NHL, and thus turns to an analysis of specific jurisdiction.

### 2. Specific Personal Jurisdiction

When considering specific jurisdiction, the Court examines the nature, quality, and quantity of NHL's contacts with Minnesota, and those contacts' relation to Plaintiffs' suit. First, the Court finds that the NHL's alleged contacts with Minnesota in the Complaint are limited to: (1) NHL players, other than Deveaux, who were residents of Minnesota and suffered from repetitive head trauma as a result of the NHL's acts and/or omissions; and (2) NHL players, other than Deveaux, who played for a Minnesota team in the NHL and suffered head trauma as a result of the NHL's acts and/or omissions. (*See* Am. Compl. ¶¶ 16, 41-42, 46, 51.)

Fatal to Deveaux and his claims are that the contacts pleaded in the Complaint do not specifically relate to his causes of action. These attenuated contacts are clearly not connected to his claims, and "[w]hen there is no such connection, specific jurisdiction is

10

lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol–Myers Squibb*, 137 S. Ct. at 1781. Here, Deveaux brings three separate claims against the NHL alleging negligence and fraud. (Am. Compl. ¶¶ 89, 569-596, Counts XXXXVII-XXXXIX.) The basis of these claims, among other things, is the NHL's alleged "disregard for Deveaux's safety" and "knowing[] conceal[ment]" of the risks Deveaux suffered from repetitive head traumas. (*See id*. ¶¶ 574, 585, 593.) This purported misconduct was not alleged to have occurred in Minnesota.

From a plain reading of the Complaint then, Deveaux's claims do not "arise out of or relate to" any NHL contacts in Minnesota. *See Bristol–Myers Squibb*, 137 S. Ct. at 1780. And like the non-resident plaintiffs in *Bristol–Myers*, Deveaux is a Canadian citizen, who does not plead any injury in Minnesota resulting from the NHL's acts or omissions. *Id*. at 1777–80, 17882. The Complaint is silent about the location of Deveaux's alleged injuries. The Fact Sheet indeed demonstrates that Deveaux did not suffer any injury in this State. (Connolly Decl., Ex. 1.) Deveaux was not involved in a single hockey brawl in Minnesota, and also never played for a Minnesota team in the NHL. (*Id*. at 4-12.) In sum, the Complaint does not allege any contacts that could support specific personal jurisdiction here.[4]

The Court thus concludes that the three main jurisdictional factors considered by the Eighth Circuit—the nature, quality, and quantity of the defendant's contacts with the

---

[4] The NHL argues that its contacts with Minnesota by virtue of having a club in the forum cannot support specific jurisdiction. (Def.'s Mem. Dismiss at 8-9.) In any event, Deveaux does not allege that his claims are specifically connected to the NHL's club in this forum.

11

forum, and the relation of those contacts to the cause of action—weigh against exercising specific personal jurisdiction over the NHL. The two remaining, secondary factors—the interest of the forum and the convenience of the parties—do not alter the Court's determination despite the underlying MDL.

While centralizing pretrial proceedings in the MDL court generally "conserve[s] the resources of the parties, their counsel, and the judiciary," *see In re Baycol Products Liability Litig.*, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001), the remaining secondary factors do not weigh in Deveaux's favor, in light of this Court's prior ruling. In declining to certify the MDL-plaintiffs' proposed classes, this Court held that each plaintiff's claim is subject to an individualized choice-of-law analysis. *NHL Players' Concussion Injury Litig.*, 327 F.R.D. at 257. Thus, as no party here is a Minnesota citizen and the location of the injuries occurred elsewhere, it is unlikely that this forum would have a clear interest in providing a forum for out-of-state residents, applying the laws of a different State.

As to the convenience of the parties, the same considerations apply. In examining Deveaux's specific causes of action, his claims do not appear to turn on this forum. No party here is a Minnesota citizen, and there is no evidence in the record that any witnesses reside here, or relevant documents are in this forum. Because potential witnesses and documents are located elsewhere, the balance of convenience "is in equipoise." *See Datalink Corp. v. Perkins Eastman Architects, P.C.*, 33 F. Supp. 3d 1068, 1076 (D. Minn. 2014).[5] All factors thus considered, the Court concludes that it may not exercise specific

---

[5] In accepting service of this action directly filed in the MDL, the parties agreed that the NHL reserved all defenses as to jurisdiction and venue. [Doc. No. 4.] The NHL's refusal

personal jurisdiction over the NHL here, at this juncture.

Deveaux bore the burden to establish that the court's exercise of personal jurisdiction would be proper, but failed to respond to the NHL's motion. Because Deveaux has not met his burden, the Court will dismiss his claims against the NHL without prejudice. *LeDuc Gifts & Specialty Prod., LLC v. New Thermo-Serv, Ltd.*, 382 F. Supp. 3d 885, 892 (D. Minn. 2019) (dismissing the case without prejudice when plaintiff did not meet prima facie burden of establishing the court's personal jurisdiction over defendant).

Accordingly, the Court grants Defendant's motion to dismiss for lack of personal jurisdiction, and therefore declines to address Defendant's alternative request to transfer venue pursuant to 28 U.S.C. 1404(a).

## IV. ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) [Doc. No. 21] is **GRANTED**.

2. The case is dismissed **WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 10, 2019  /s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge

---

to waive these defenses also corroborates the Court's conclusion that the MDL does not tip the scale in Deveaux's favor.